IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOANNE HOLLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-0908-B |
| | § | |
| ERIC K. SHINSEKI, | § | |
| SECRETARY | § | |
| UNITED STATES DEPARTMENT | § | |
| OF VETERANS AFFAIRS, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

JAMES T. JACKS
United States Attorney

T. J. JOHNSON
Assistant United States Attorney
Texas Bar No. 10794175
1100 Commerce Street, Third Floor
Dallas, Texas  75242
Tel: 214.659.8600
Fax: 214.676.2916
Email: tj.johnson@usdoj.gov

OF COUNSEL:
Ken Carroll
Assistant Regional Counsel
US Department of VA
Office of Regional Counsel
4500 South Lancaster Road
Dallas, Texas   75216

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.   Standard For Summary Judgment Pursuant To Rule 56. . . . . . . . . . . . . . 2

      B.   Shinseki Is Entitled To Summary Judgment On Holland's Failure
           To Accommodate Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           1.   Holland Is Not Qualified To Preform Her Duties As An
                Operating Room Staff Nurse. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.   Holland Was Not A Disabled Person Because Temporary Stress
                While Working For One Specific Supervisor In One Specific
                Job Is Not A Disability Under The Rehabilitation Act. . . . . . . . . . 14

           3.   The VA Engaged In The Interactive Process Attempting To
                Understand Her Requests And To Determine Appropriate
                and Reasonable Accommodation, If Any. . . . . . . . . . . . . . . . . . . 16

           4.   The VA Sought To Place Holland In A Temporary Reassignment
                Although It Was Not Required To Do So. . . . . . . . . . . . . . . . . . . 18

      C.   Holland's Claim Of Disability Retaliation Fails. . . . . . . . . . . . . . . . . . . 19

           1.   Requirements For Disability Retaliation. . . . . . . . . . . . . . . . . . . 19

           2.   The Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                a.   Infection Control Nurse. . . . . . . . . . . . . . . . . . . . . . . . . 21

                b.   OR Nurse Manager. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                c.   OR Assistant Nurse Manager. . . . . . . . . . . . . . . . . . . . . 22

d.     Nurse, Chief of Surgical Service.. . . . . . . . . . . . . . . . . . . . 22

e.     Orthopedic Nurse Coordinator. . . . . . . . . . . . . . . . . . . . . 22

f.     Promotion to Nurse III. . . . . . . . . . . . . . . . . . . . . . . . . . 23

g.     "Bad" reference to Orlando VAMC. . . . . . . . . . . . . . . . . 24

h.     Denial of work in Patient Safety. . . . . . . . . . . . . . . . . . . . 25

i.     Delayed step within grade increase.. . . . . . . . . . . . . . . . . . 25

D.     Holland's Claim Of FMLA Interference Fails. . . . . . . . . . . . . . . . . . . . . . 26

    1.     Requirement For FMLA Interference Claim. . . . . . . . . . . . . . . . . 26

    2.     The Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        a.     May 6 email sent to employees with no need to know. . . . . 28

        b.     Discussion of medical condition in open area. . . . . . . . . . 28

        c.     Refused to confirm Holland's FMLA request. . . . . . . . . . 29

        d.     Forced to return to work despite her leave request; Refused to give Holland time off. . . . . . . . . . . . . . . . . . . . 29

E.     Holland's Claim Of FMLA Retaliation Fails. . . . . . . . . . . . . . . . . . . . . . . 31

    1.     Requirement For FMLA Retaliation Claim. . . . . . . . . . . . . . . . . . 31

    2.     The Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        a.     Refused to interact with Holland regarding her FMLA request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        b.     Refused to accommodate Holland's disability. . . . . . . . . . 32

        c.     Refused to promote or interview Holland for other VA positions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

F.     Holland's Claims Of Retaliation Because Of Protected Activity

Fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

1.    Requirement For Title VII Retaliation Claim. . . . . . . . . . . . . . . . 33

2.    Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

G.    Holland's Claims Of Hostile Work Environment Fail. . . . . . . . . . . . . . . 36

1.    Requirement For Hostile Work Environment Claim. . . . . . . . . . . 36

2.    Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

a.    Instrument count. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

b.    Failure to be in OR Room. . . . . . . . . . . . . . . . . . . . . . . . . . 38

c.    Leave usage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

d.    Scrutinization of OR Room. . . . . . . . . . . . . . . . . . . . . . . . . 39

e.    Proficiency rating. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

f.    Claim that AWOL was not removed. . . . . . . . . . . . . . . . . . . 40

g.    Refusal to cancel NNEI debt. . . . . . . . . . . . . . . . . . . . . . . . 40

3.    Holland Is Unable To Establish The Alleged Hostile Work
Environment Was Based On Any Prohibited Basis. . . . . . . . . . . . 41

4.    Holland Is Unable To Establish That The Alleged Hostile Work
Environment Affected A Term, Condition Or Privilege Of
Employment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998)(incidents
 involving staring and unwanted touching did not rise to the level of
 severe or pervasive). ................................................................................... 45

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ................................. 3, 4

*Anderson v. New Orleans Jazz & Heritage Festival and Foundation, Inc.*,
 464 F. Supp. 2d 562 (E.D.L.A. 2006). ....................................................... 27

*Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702 (5th Cir. 1997). ............. 6

*Brazoria Co., Tex. v. EEOC*, 391 F.3d 685 (5th Cir. 2004)............................. 34

*Burch v. City of Nacogdoches*, 174 F.3d 615 (5th Cir. 1999)........................... 8

*Burlington N. & Santa Fe Ry Co.*, 548 U.S. 53 (2006)............................... 34, 35

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408 (5th Cir.
 2007). ........................................................................................................... 35

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ............................................... 4

*Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993). ................................. 8

*Chiari v. City of League City*, 920 F.2d 311 (5th Cir. 1991). ......................... 12

*Cottrill v.  MFA, Inc.*, 443 F.3d 629 (5th Cir. 2006), *citing, Schoffstall v.
 Henderson*, 223 F.3d 818 (8th Cir. 2000). ................................................. 36

*Daigle v. Liberty Life Insurance Co.*, 70 F.3d 394 (5th Cir. 1995). ................. 5

*Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995), *cert. denied*, 516
 U.S. 1172 (1996)...................................................................................... 12, 14

*Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th
 Cir. 1996). .................................................................................................... 3

*EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005)(*quoting Baert
 v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998))................... 16

i

*Eason v. Thaler*, 73 F.3d 1322 (5th Cir. 1996). ............................................................... 4

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1986). .......................................... 36, 43

*Farpella Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996). ....................... 37

*Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800 (5th Cir.1997).................................. 7

*Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003). .................................................... 37

*Garraway v. Solomon R. Guggenheim Foundation*, 415 F. Supp. 2d 377
     (S.D.N.Y. 2006). ........................................................................................... 27

*Grizzle v. The Travelers Health Network*, 14 F.3d 261 (5th Cir. 1994). ....................... 20

*Harilall v. University Health System Development Corp.,* No. 98-50652, 1999 WL
     152923 (unpublished)(5th Cir. 1999)  ......................................................... 42

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). .................................................... 43

*Herrera v. Millsap*, 862 F.2d 1157 (5th Cir. 1989). ........................................................ 4

*Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317 (5th Cir. 2004).......................... 35

*Hunt v. Rapides Healthcare System LLC*, 277 F.3d 757 (5th Cir. 2001).................. 32, 33

*King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir. 1999). ............................... 27

*Lawrence v. University of Tex. Medical Branch*, 163 F.3d 309 (5th Cir. 1999),
     *quoting Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556 (5th Cir.
     1983). ........................................................................................................... 5

 *Laxton v. Gap, Inc.*, 333 F.3d 572 (5th Cir.2003), *quoting Reeves v.
     Sanderson  Plumbing Products, Inc.*, 530 U.S. 133 (2000)........................ 35

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*quoting Matsushita
     Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). ............... 3, 4

*Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731 (5th Cir. 1999).......................................... 16

*Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874 (5th Cir. 2003). ....................... 34

*Matsushita*, 475 U.S. at 586.......................................................................................... 4

*Mauder v. Metropolitan Transit Authority*, 446 F.3d  574 (2006). ............... 26, 31, 32, 33

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir.2007)................................. 35

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). ............................... 19

*McGuinness v. USPS*, 744 F.2d 1318 (7th Cir. 1984). ...................................... 2

*McKnight v. Trinity River Authority of Tex.*, 2009 WL 1117436 (N.D. Tex. 2009). ................................................................................................................ 20

*Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068 (2000)................................................................................................. 44

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)................................... 36

*Milton v. Scrivner, Inc.*, 53 F.3d 1118 (10th Cir. 1995). .................................. 12

*O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349 (11th Cir. 2000). .............. 27

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 78 (1998). .................. 43

*Pinkerton v. Spellings*, 529 F.3d 513 (5th Cir. 2008). ...................................... 5

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998). ...................... 4

*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002)...................... 4, 37, 43, 44

*Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996). .......................... 3

*Richardson v. Monitronics Intern, Inc.*, 434 F.3d 327 (5th Cir. 2005)............... 20

*Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254 (5th Cir. 1999)......... 13, 14

*Sabzevari v. Reliable Life Ins. Co.*, 264.......................................................... 21

*Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055 (7th Cir. 2000)................... 15

*Seaman v. CSPH, Inc.*, 179 F.3d 297 (5th Cir. 1999). .................................... 20

*Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005). ................... 20

*Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871 (5th Cir. 1999)...................................................................................... 44

*Skinner v. Brown*, 951 F. Supp. 1307 (S.D. Tex. 1996), *aff'd*, 134 F.3d 368

i

(5th Cir. 1997) (table). ........................................................ 42

*Strickland v. Water Works & Sewer Board*, 239 F.3d 1199 (11th Cir. 2001). ................. 27

*Taylor v. Principal Financial Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996). ............................ 7

*Thompson v. Holy Family Hospital*, 121 F.3d 537 (9th Cir. 1997). ................................ 14

*Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090 (5th Cir. 1996). ............................ 7, 8

*Turner v. Baylor Richardson Medical Ctr.*, 476 F.3d 337 (5th Cir. 2007). ........... 4, 33, 43

*Vallecillo v. U.S. Dep't of Hous. and Urban Dev.*, 155. ................................................. 42

*Weiler v. Household Finance Corp.*, 101 F.3d 519 (7th Cir. 1996). ........................ 15, 16

*Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313 (5th Cir. 1995). .................. 3

## FEDERAL STATUTES

42 U.S.C. § 12111(3). ..................................................................................... 12

42 U.S.C. § 12111(8). ....................................................................................... 6

42 U.S.C. §§ 12111(8), 12112(a). ..................................................................... 8

42 U.S.C. § 12111(9). ....................................................................................... 7

42 U.S.C. § 12112(b)(5)(A). .............................................................................. 6

42 U.S.C. § 12113(b). ..................................................................................... 12

42 U.S.C.A. §2000e-3(a). ............................................................................... 34

29 C.F.R. § 1630.2(g). ....................................................................................... 6

29 C.F.R. §1630.2(i)(1)(i). ................................................................................. 6

29 C.F.R. § 1630.2(m). ..................................................................................... 6

29 C.F.R. § 1630.2(m) & (n). ............................................................................ 8

29 C.F.R. §1630.2(p)(2)(v). ............................................................................ 12

i

29 C.F.R. § 1630.2(r). .................................................................................... 12

29 C.F.R. § 825.216(a). ................................................................................... 33

29 C.F.R. §825.220(c)(1997). ......................................................................... 31

29 U.S.C. §2612(a)(1)(D) (2002) .................................................................... 31

29 U.S.C. § 2615(a)(1). ............................................................................. 26, 27

29 U.S.C. § 794(a). ........................................................................................... 8

29 U.S.C. § 794a(a)(1). ..................................................................................... 5

Americans with Disabilities Act ("ADA", § 42 U.S.C. 12101, *et seq*. ............................ 2

Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. ...................................... 2

Fed. R. Civ. P. 56(c). ........................................................................................ 2

Fed. R. Civ. P. 56(e)(2). ................................................................................... 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOANNE HOLLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-0908-B |
| | § | |
| ERIC K. SHINSEKI, | § | |
| SECRETARY | § | |
| UNITED STATES DEPARTMENT | § | |
| OF VETERANS AFFAIRS, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 56, Eric K. Shinseki, Secretary, U.S. Department of

Veterans Affairs ("Defendant" "Shinseki" or "VA"), by and through the United States

Attorney for the Northern District of Texas, files his Memorandum of Law in Support of

Defendant's Motion for Summary Judgment (Memorandum).

**II.**

**STATEMENT OF UNDISPUTED FACTS**

In accordance with Local Rule 56, the undisputed facts are set out in Defendant's

Motion for Summary Judgment filed simultaneously with this Memorandum of Law.

# III.

# ARGUMENT AND AUTHORITIES

Plaintiff Joanne Holland (Holland) alleges that the Defendant (VA) failed to accommodate her disability, retaliated against her because of her disability, interfered with her right to leave under FMLA, retaliated against her because she took FMLA leave and retaliated against her because she engaged in protected activity.  Plaintiff's First Amended Complaint (Complaint),  pp. 2, 7-9.  Holland also alleges that because she opposed workplace discrimination the VA failed to promote her and subjected her to a hostile work environment.  *Id*. at 9.

Holland has alleged her claims under both the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. and the Americans with Disabilities Act ("ADA", § 42 U.S.C. 12101, *et seq*.  Complaint, p 3.  Since Holland is suing as an employee of a Federal agency, she must pursue her claims under the Rehabilitation Act and not the ADA. *McGuinness v. USPS*, 744 F.2d 1318, 1321 22 (7th Cir. 1984).

## A.     Standard for Summary Judgment Pursuant to Rule 56

Summary judgment is only proper where the nonmovant cannot demonstrate a genuine issue of material fact.  Fed. R. Civ. P. 56(c).  Examination of the summary judgment record reveals that Holland's claims are based on nothing more than her subjective belief and conclusions that she was discriminated against.  It is more than well settled in the Fifth Circuit that an employee's subjective belief that she suffered an

adverse employment action as a result of discrimination, without more, is not enough to survive a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996).

Rule 56 (c) of the Federal Rules of Civil Procedure provides, in pertinent part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (quotation marks and citations omitted)).

If the moving party presents evidence showing the absence of any material fact, the opposing party must then identify specific evidence in the record showing a genuine fact issue. *See* Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 - 57 (1986). A genuine issue of fact exists only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Matsushita*, 475 U.S. at 586. Conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports [the opponent's] claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In analyzing the parties' evidence, the Court must view the facts and the inferences to be drawn in the light most favorable to the non movant. *See Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d at 1079; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). "'[A] subjective belief of discrimination, however genuine, [may not] be the basis

of judicial relief.'" *Lawrence v. Univ. of Tex. Med. Branch*, 163 F.3d 309, 313 (5th Cir. 1999), *quoting Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

**B.      Shinseki Is Entitled To Summary Judgment On Holland's Failure To Accommodate Claim**

In her first cause of action, Holland alleges that the VA failed and refused to accommodate her disability and failed to engage in the reasonable accommodation process. Complaint, p. 7.

The remedies, procedures and rights of Title VII govern Rehabilitation Act claims. *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008); 29 U.S.C. § 794a(a)(1). Furthermore, the Rehabilitation Act incorporates the standards used in the Americans with Disabilities Act ("ADA"), that is, claims that are subject to the Title VII burden shifting analysis. *See Daigle v. Liberty Life Ins*. *Co*., 70 F.3d 394, 396 (5th Cir. 1995).

Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a "qualified individual with a disability" because of the disability of such an individual in regard to, among other things, "the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  In addition, Section 12112(b)(5) states that the term "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity."

Under the ADA, a disability is defined as, *inter alia*, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g). Major life activities include working. 29 C.F.R. § 1630.2(i)(1)(i). A "qualified individual with a disability" means "an individual with a disability who satisfies the requisite skill, experience, education and other job related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *See* 42 U.S.C. § 12111(8).

In addition, the ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless doing so "would impose an undue hardship" to the employer. 42 U.S.C. § 12112(b)(5)(A). *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 706 (5th Cir. 1997). In determining the essential function of a position, the Court must consider the employer's judgment as to what functions of a job are essential, and in particular, should evaluate any written description of the job. *See* 42 U.S.C. § 12111(8).  The term "reasonable accommodation" may include:  (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision

of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).

The employer's obligation to provide a reasonable accommodation is triggered by the employee's request for an accommodation. *See Taylor v. Principal Financial Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (citing the ADA's implementing regulations). The responsibility for fashioning a reasonable accommodation is shared between the employee and the employer through an "interactive process." *See Id.* The ADA and Rehabilitation Act prohibit discrimination on the basis of disability and require reasonable accommodations, but do not require an employer to take affirmative action in favor of people with disabilities or to create a new job for them. *See*, *e.g.*, *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 808 - 10 (5th Cir.1997); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996).  When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation.  *Taylor*, 93 F.3d at 165 n.9 (quoting EEOC Interpretive Guidance).

Because Holland was not a "qualified" individual with a disability under the ADA, her failure to accommodate claim fails and Shinseki is entitled to summary judgment.

### 1.     Holland Is Not Qualified To Perform Her Duties As An Operating Room Staff Nurse

On September 5, 2008, Holland submitted a request for reasonable

accommodation. (App.[1], pp.006-007)  She also submitted a Certificate of Health Care Provider signed by Dr. P. Holm. (App., pp.003-005)  Holland specifically sought a "suitable" position and asked to be advised when a position would be available for her. (App., pp.006-007)  She advised that on the advice of her attorney she was pursuing a worker's compensation claim for a work-related illness.  *Id.*

In order to be "qualified," under the ADA a plaintiff must show that she, "with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires."  42 U.S.C. §§ 12111(8), 12112(a); *see also* 29 U.S.C. § 794(a); 29 C.F.R. § 1630.2(m) & (n); *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999).  A qualified person is one who is able to meet all of the program's requirements in spite of his handicap.  *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993).

It is undisputed that the essential functions of the Operating Room Staff Nurse position involved the efficient management of a hospital operating room for patients undergoing surgery, including patient care and physician support, and it involves being able to do so safely. (App., pp.164-175)  To avoid summary judgment, Holland needs to show that (1) she could manage an operating room safely despite her disability or (2) a reasonable accommodation of her disability would have enabled her to manage the operating room safely.  *See Turco*, 101 F.3d 1090 at 1093.

---

[1] "App." is Appendix.

Holland testified in her deposition that she could do her job pretty well before her supervisor, Kathy McClelland (McClellan), charged her with an absent-without-leave (AWOL).  (App., pp.176).  She had received an AWOL on or about March 7, 2008.  (App., p.116).  After McClelland charged her with AWOL, Holland alleges that she developed ailments that affected her job functions because McClelland was scrutinizing her.  (App., pp 177, 180).  She claims that she suffered from, among other things, inability to sleep, lack of sleep, depression, anxiety and loss of concentration. (App., pp.003-005, 162-163).   Holland testified that because of these mental problems like lack of sleep, insomnia, loss of concentration and anxiety she cannot do the work; that "it jeopardizes the patient's safety." (App., pp.180-186).  Holland stated that "...the code of nurses is that you have to perform correctly on your job without any limitation.  At the time, I cannot able to function. And the reason why, I send Ms. Griffin on May 6, an email regarding my health care conditions."  (App., pp. 180). Holland further stated "I cannot perform my job as a nurse.  As an operating room nurse – as a nurse, because of Ms. McClellan.  I have a problem with Ms. McClellan frequently scrutinizing me in my room; in and out' wrongfully charge me AWOL.  Every little thing that she did to me . . ." (App., pp.177, 180, 187-188).

On May 6, 2008, Holland notified Sandra Griffin (Griffin), Associate Director, Patient Care Services, that she needed "time to recover," wanted "one month of unpaid leave" and she described her issues with her supervisor. (App., pp. 050).  Holland

informed Griffin that she was seeking positions outside the OR and requested that, upon her return, she be reassigned to a temporary position until she could attain a position that matched her skills, experience and education. *Id.* Holland eventually requested leave under the Family Medical Leave Act (FMLA) on June 13, 2008 and then later requested an extension of her leave under FMLA. (App., pp.33-37, 38, 39-40). Holland's request for FMLA and her request for an extension were both approved. (App., pp.33-37, 38-40, 127-130).

In her September 5, 2008 request for accommodation, Holland included a FMLA Health Care Provider certification from Dr. Holm in support of her request, wherein he stated "unable to perform work, no direct patient care[2]." (App., pp.003-005). In her request for reasonable accommodation, Holland indicated that she considered her disability to be temporary, no direct patient care, and she requested reassignment and modification to her work schedule, 7:00 am to 3:00 pm, for "avoiding heavy commuting," and one day off (LWOP) every two weeks. (App., pp.006-007). Holland stated "[d]ue to depression, anxiety, lack of focus, insomnia, limited energy, medication management, and weight-loss the position should be administrative, data collection and analysis, or any other equivalent position that is not adverse or hostile." *Id.* Her reason for the request: "Given my limitations providing any type of direct patient care would go against the

---

[2]On July 22, 2008, Holland's doctor, Dr. Peter Holm, submitted a statement to the VA indicating that Holland was "unable to work in present environment . . . psychologically toxic nature". (App., pp.0027-029). He listed the same symptoms which Holland had previously complained about: depression, anxiety, insomnia, diminished attention and concentration. *Id.*

nursing code of ethics and be a safety and liability issue.  Any type of position that has a high level of liability should be avoided." *Id.*  Holland's own doctor stated that her condition commenced approximately March 7, 2008, that Holland could not provide direct patient care because of her symptoms that "persist in the toxic work environment" and that she was "unable to perform work."  (App., pp.003-005).  *See Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 838 (5th Cir. 1999) (concluding that, even in the absence of a *per se* rule, there is no genuine issue of material fact based on plaintiff's doctor's assessment as to whether plaintiff is qualified for his job with or without accommodation).

Holland's request shows no accommodation that would enable her to perform her job managing a VA operating room.  (App., pp.006-007).  Her request only seeks a reassignment and modification to her work schedule and a preference for a work schedule that would allow her to avoid traffic.  *Id*.  Holland made no effort in her request to show how her ailments and concentration problems would all be alleviated with accommodation so that she could perform the essential functions of her job.  Instead, she sought a position suitable to her.*Id.*  Patient Care Services, however, would have no position where insomnia, lack of sleep, inability to concentrate and, inattentiveness would not impact the ability to perform the essential functions of the job.  Griffin Affidavit, Exhibit 53.  Such would likely place a heavier burden on coworkers.  *Id.*  And, an accommodation that would result in other employees having to work harder or longer is

not required under the ADA.  *Milton v. Scrivner, Inc*., 53 F.3d 1118, 1125 (10th Cir.

1995); 29 C.F.R. §1630.2(p)(2)(v).  Additionally, the VA is not required to create light

duty jobs to accommodate disabled employees.  See *Daugherty v. City of El Paso*, 56 F.3d

695, 700 (5th Cir. 1995), *cert. denied*, 516 U.S. 1172 (1996)("[an employer] is not

required to fundamentally alter its program.  Nor is the [company] required to find or

create a new job for the [plaintiff]...")(*quoting Chiari v. City of League City*, 920 F.2d

311, 318 (5th Cir. 1991)).

     In addition, the VA asserts the "direct threat" defense with respect to any claim

that Holland is qualified to perform her job managing a VA operating room.  The ADA,

and by extension the Rehabilitation Act, provides that "'qualification standards' may

include a requirement that an individual shall not pose a direct threat to the health or

safety of other individuals in the work place."  42 U.S.C. § 12113(b).  A "direct threat" is

defined as "a significant risk to the health or safety of others that cannot be eliminated by

reasonable accommodation."  42 U.S.C. § 12111(3).  The regulations provide that a

determination whether an individual poses a direct threat "shall be based on an

individualized assessment of the individual's present ability to safely perform the

essential functions of the job."  29 C.F.R. § 1630.2(r).  Moreover, "[t]his assessment shall

be based on a reasonable medical judgment that relies on the most current medical

knowledge and/or on the best available objective evidence."  *Id.*

     The burden is on the plaintiff to show that she is not a direct threat, unless the

VA's safety requirements screen out or tend to screen out disabled individuals, in which case the burden shifts to the employer.  *See Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 259-260 (5th Cir. 1999), *reh'g en banc granted*, 187 F.3d 254, *aff'd* 213 F.3d 209 (5th Cir. 2000).  By her own testimony, Holland is a direct threat, as her position description specifically required an ability to safely manage an operating room and would screen out a nurse or employee who could otherwise not fulfill these duties.  (App., pp.180).   Holland's position as OR Staff Nurse required her to efficiently and safely manage a VA operating room for patients undergoing surgery, including patient care and physician support. (App., pp.127-130).  Any inattentiveness, loss of concentration, sleep deprivation, etc., occurring during surgery had the potential to harm not only herself, but also others and this was not acceptable.  (App., pp.127-130). By Holland's description, the OR nurse is the "captain of the ship" and in the operating room "the patient's life is in her hands."  (App., pp.168, 116-187).

Additionally, Dr. Holm concluded in July, 2008, and continued to state thereafter, that Holland was unable to perform work in the OR.  (App., pp.003-005, 027-029).  On September 8, 2008, Holland attempted to clarify her doctor's note, "unable to perform work, no direct patient care," by stating that her doctor was advising that "she not have direct patient care as it could be a liability issue and go against the nursing code of ethics." (App., pp.008-013).  She further advised that she was "able to perform many other functions such as positions . . . such as quality management infection control nurse

or any other equivalent position." *Id.* And on September 11, 2008, to "help aid the RAC

committee in finding a position based on reasonable accommodation," Holland gave the

VA Reasonable Accommodation Committee her resume to help them find a new position

for her based on her experience, skills and education. (App., pp.008-013). Holland

wanted the VA to accommodate her not by some action that would enable her to do her

job as OR Staff Nurse, despite her ailments, but accommodate her by finding her a new

position in the VA where McClellan was not her supervisor, which is not a requirement

under the ADA. *Daugherty,* 56 F.3d at 700; (App., pp.208-209). Holland was not and is

not a qualified individual under the ADA.

> **2.     Holland Was Not A Disabled Person Because Temporary-Stress While Working For One Specific Supervisor In One Specific Job Is Not A Disability Under The Rehabilitation Act**

Under the Rehabilitation Act, a disability is defined as one that substantially limits

one or more major life activities. Mental impairment that arises out of one specific

stressful work situation does not qualify as a disability. *Thompson v. Holy Family Hosp.*,

121 F. 3d 537, 540 (9th Cir. 1997) ("To establish a substantial limitation, [the plaintiff]

must demonstrate that she is 'significantly restricted in the ability to perform either a class

of jobs or a broad range of jobs in various classes as compared to the average person

having comparable training, skills and abilities.' 29 C. F. R. § 1630.2(j)(3)(I). The

inability to perform one particular job does not constitute such a limitation.") Similarly,

the inability to work for one particular supervisor is not a disability under the ADA.

*Schneiker v. Fortis Ins. Co.*, 200 F. 3d 1055, 1062 (7th Cir. 2000) ("standing alone, a personality conflict between an employee and a supervisor - even one that triggers depression - is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor"); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) ("if [the plaintiff] can do the same job for another supervisor, she can do the job, and does not qualify under the ADA as disabled").

In the case at hand, Holland attributes her alleged stress disability to scrutiny by her supervisor, McClelland, who supervised the "toxic work environment." (App., pp.055, 0185-188). In an October 2008 letter, Holland's doctor claimed that she could return to work but she should "never again work under the supervision of her present supervisor." (App., pp.055). Holland requested reassignment to work under other supervisors and when she returned to the VA she did work under other supervisors and, presumably, was able to work under any supervisor other than McClellan. In February 2009 when McClellan was no longer manager in the OR, Holland pursued positions as OR Nurse Manager and OR Assistant Nurse Manager, presumably asserting an ability to do the job as OR Nurse in the absence of McClellan. Holland stated that McClellan's scrutiny is what made it difficult for her to perform the functions of her job. (App., pp. 192). In deposition, Holland had no explanation for why McClellan is scrutinizing her performance, yet she gives Holland a rating of "high satisfactory." (App., pp.192, 194). Holland's inability to work for McClellan, one specific supervisor, was therefore not a

disability under the Rehabilitation Act. *Weiler*, 101 F.3d at 525.

> **3.    The VA Engaged In The Interactive Process Attempting To Understand Her Requests And To Determine Appropriate And Reasonable Accommodation, If Any**

The ADA requires that the employer and employee engage in an interactive process to determine a reasonable accommodation. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)(*quoting Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633 (7th Cir. 1998)). Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA. *Loulseged v. Akzo Nobel Inc*., 178 F.3d 731, 736 (5th Cir. 1999). However, these courts have also held that the employer cannot be found to have violated the ADA when responsibility for the breakdown of the interactive process is traceable to the employee and not the employer. *Id.*

The uncontroverted summary judgment evidence demonstrates that from May 21, 2008, when Griffin first became aware of Holland's first request for "a one month LWOP," which she later defined as to begin on June 16, 2008, to late September 2008, when Holland returned from leave and made her first request for accommodation, and finally from late September 2008, to the time she took a job at the Temple VA hospital, the VA Dallas staff worked with Holland, including a face to face meeting, to determine whether she had a disability and, if so, what were her limitations and how could she be

accommodated and to try to work through her other issues.  (App., pp 001-002,.014, 155-157, 238, 239-241). And, significantly, Holland admitted that McCall told her that her medical documentation was insufficient.  (App., pp.211).  Yet, it was Holland who resisted VA's effort to get clarification from her doctor on all of the issues. (App., pp.60-62).  Holland informed VA staff that she did not authorize anyone to contact her doctors. *Id*.  VA staff could not contact her doctors to obtain clarificatin or additional information. *Id*.

Even though the VA Reasonable Accommodation Committee eventually denied her request for accommodation in October 2008, it was because she had failed to provide sufficient medical documentation and because she had not demonstrated that she was a qualified individual under the ADA.  (App., pp.015-016).  In April 2009, Holland again submitted a request for reasonable accommodations, she indicated that the doctor recommended that she use leave time and one day off per week "to recover from her lack of sleep"although the March 9, 2009 letter from her doctor indicated that Holland still had the same symptoms, i.e. depression, panic, anxiety, and insomnia. (App., pp.150-153). Ironically, even with these symptoms her doctor recommended her return to the operating room.  *Id*.  Her second request for reasonable accommodation, made in April 2009, was not acted upon simply because she took the job at the Temple VA hospital. (App., pp.75, 76, 155-157).

Even though Holland was not a qualified individual and, therefore, not entitled for

protection under the ADA, the summary judgment evidence demonstrates the VA's good faith efforts to work with Holland to address her work related issues.  Holland's conclusory allegations to show otherwise are insufficient to defeat summary judgment, especially since it was Holland herself who resisted VA's efforts.

4.    **The VA Sought To Place Holland In A Temporary Reassignment Although It Was Not Required To Do So**

In May 2008, when Holland requested leave because of stress, depression and her other ailments, her request was approved.  She, in fact, went out on FMLA leave and did not return to the work place until late September, 2008.  Even when she returned to work at the VA, though the VA had determined that Holland was not "qualified" under the ADA for the requested accommodation, the VA, nonetheless, continued to work with her to find some work at the VA-Dallas hospital where she would maintain her employment status.  (App., pp.127-130).  VA Nursing Service guidelines provided information for determining appropriate temporary assignments for nursing personnel.  (App., pp.101-103).  Holland was given temporary assignments to the Flu Clinic and to CCHT, where she worked from September 2008 until May 2009, when she accepted a new permanent assignment at the VA Temple hospital.  And, though she was given temporary assignments, her doctor complained that he was concerned for her health because "...she continues to be placed in positions that are undesirable and not within her field of expertise and knowledge...." (App., pp.96).  Her doctor recommended that she be placed in a "position that complements her experience and knowledge."  *Id*.  Although Holland

complained that the temporary assignments were not suitable to her education and experience, there was no change in her title, salary, benefits or other employment. (App., pp.127-130). Indeed, Holland does not claim and cannot show any such change.

Because the uncontroverted evidence shows that there are no genuine issues of material fact that Holland was *not* a "qualified individual with a disability, that is, whether she is a person who, with or without reasonable accommodation, can perform the essential functions of her position as Operating Room Staff Nurse" at the VA, Shinseki is entitled to summary judgment on Holland's claim that the VA failed to accommodate.

**C.    Holland's Claim Of Disability Retaliation Fails**

Holland alleges in her second cause of action that because she exercised her rights under the ADA and the Rehabilitation Act by requesting accommodation and opposing disability discrimination, the VA retaliated against her by failing to promote her, by preventing her from transferring, being reassigned or obtaining another position within the VA, and by delaying her within grade pay increase. Complaint, p. 7-8.

**1.    Requirements For Disability Retaliation**

Retaliation claims brought under the ADA are analyzed using the *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, she must establish a prima facie case of retaliation. If she is successful, the burden shifts to the VA to articulate a legitimate, non-discriminatory reason for the challenged employment action. If the VA does so, Holland must demonstrate that the

proffered reason is either pretextual, or if the proffered reason is admittedly true, that retaliatory intent also motivated the VA's hiring decisions. *Richardson* v. *Monitronics Intern, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005); *McKnight v. Trinity River Auth. of Tex.*, 2009 WL 1117436, *5 (N.D. Tex. 2009). In the context of a retaliation claim, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse employment action was merely a pretext for the real, retaliatory purpose." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: 1) she engaged in an activity protected by the ADA; 2) she was subjected to an adverse employment action; and 3) a causal connection exists between the protected activity and the adverse employment action. *Seaman v. CSPH, Inc*., 179 F.3d 297, 301 (5th Cir. 1999); *Grizzle v. The Travelers Health Network*, 14 F.3d 261, 267 (5th Cir. 1994). Holland cannot present evidence of a causal connection-that her protected activity caused VA not to promote her, not to reassign or transfer her, or to delay her within grade pay increase.

Summary judgment evidence demonstrates that she applied for positions before any protected activity, the decision-makers regarding the positions that Holland applied for either did not have any knowledge of her discrimination claims and/or the decision makers determined that Holland was not the most qualified candidate for the position and/or Holland did not meet the basic qualifications for those positions.  Even so, denial of a lateral transfer, and by extension denial of a transfer from a permanent position to a

temporary position, is not a materially adverse employment action.  See *Sabzevari v. Reliable Life Ins. Co.*, 264 Fed. Appx. 392, 396 (5th Cir. 2008). Holland cannot dispute this proof.

       2.      **The Allegations:**

       a.  <u>**Infection Control Nurse:**</u>  Holland applied and was interviewed for Infection Control Nurse in April 2008, prior to filing any EEO complaint or prior to VA's knowledge that she claimed any health issues.  (App., pp.056).  Griffin learned of Holland's complaints on May 21, 2008.  (App., pp.50-51).  Holland filed her EEO complaint on May 17, 2008.  (App., pp.114-124).  Holland's interview was before a panel, which scored her third out of six candidates. (App., pp.045).  Notwithstanding, the person who made the selection for that job was Beverly Gray, who had no knowledge of any EEO claim or disability. (App., pp.125-126).  Although Holland alleges that Griffin affected that decision, in fact, Infection Control is not under Griffin and Griffin had no input into this selection. (App., pp.127-130).  Finally, Holland admits that she does not know whether Infection Control is under Griffin. (App., pp.209-210).  Holland cannot provide any evidence that Griffin affected Gray's decision, in any way.

       b.  <u>**OR Nurse Manager:**</u> Holland interviewed for the OR Nurse Manager position in February 2009.  Only two people were interviewed for the position at that time and Holland's panel interview scores were half that of the other interviewee: 44.8 to 24.2. (App., pp.77-78). It is undisputed that no selection was made and that the job was

reannounced.  (App., pp.127-130). A second round of interviews occurred in April 2009, and all of the people interviewed also scored higher than Holland. (App., pp.77-78). Although Griffin is the person who made the final selection, she did so based upon the recommendation of the interviewing panel.  (App., pp.127-130).  Finally, it is also significant that Holland applied for her current position at the Temple VAMC in or about April 2009, and she testified that given a choice of whether to take a job at the Dallas VAMC or the Temple VAMC, she would have opted for the Temple VAMC.  (App., pp.138-140).

       **c.  <u>OR Assistant Nurse Manager:</u>**  Although Holland applied for OR Assistant Nurse Manager, she was not selected. Indeed, no one was selected, because Griffin wanted to reannounce it so that the new OR Nurse Manager could make the decision. (App., pp.127-130).  Significantly, however, Holland had already applied for a position at the Temple VAMC, and she admits that given a choice between that job and a job at the Dallas VAMC, she would have taken the former. (App., pp.138-140).

       **d.  <u>Nurse, Chief of Surgical Service:</u>**  Holland was interviewed and considered for this position in October or November 2008.  The selecting official was Wade Vlosich, who had no knowledge of any EEO complaint or alleged disability claimed by Holland.  (App., pp.142-143). His decision was based upon the recommendation of a three person panel, which did not recommend Holland.  *Id.*

       **e.  <u>Orthopedic Nurse Coordinator:</u>** Holland alleges that she was not

selected for this position.  However, the undisputed record reflects that Holland never

applied for the position.  (App., pp.144-145).

      **f.  <u>Promotion to Nurse III:</u>**  By letter dated May 23, 2008, Griffin notified

Holland that the Nurse Professional Standards Board (NPSB) reviewed her for promotion

to Nurse III, but had determined that she had not met nine necessary requirements for the

promotion.  (App., pp.018-019).   The Board action is dated May 13, 2008, which is

before Holland filed a formal complaint of discrimination.  (App., pp.046-047).  The

review was performed by a panel of three nurses against whom there is no allegation of

discriminatory animus.  The decision was approved by Joseph Dalpiaz, the facility

Director, but it is neither approved nor disapproved by Griffin. (App., pp.127-130). And,

Griffin's only role is to ensure that the NPSB uses the correct standards in its review of

nurses.  *Id.*  Griffin determined that the correct standards were used in the PPSB's review

of Holland.  *Id*.

      In the May 23 letter, Holland was advised that she could appeal the decision within

14 days. (App., pp.018-019).  However, Holland did not request reconsideration or

attempt to appeal the NPSB decision until September 2008.  (App., pp.020-026).

Notwithstanding the lateness of her request for reconsideration, the NPSB did reconsider

her promotion. (App., pp.127-130).  That reconsideration was performed by a panel of

three different nurses, against whom there is no allegation of discriminatory animus, who

came to the same conclusion as the first panel of nurses, that is, that Holland did not meet

the criteria for promotion to Nurse III. (App., pp.048-049).

**g. "Bad" reference to Orlando VAMC:** Holland alleges that Griffin

provided a "bad" reference to the Orlando VAMC, which caused that facility to rescind a

job offer that was made by Wanda Laakso.  However, Laakso did not make an offer to

Holland. (App., pp.073-074). The one time Laakso called Holland was simply to obtain a

release from her so that Orlando VAMC could obtain a job reference from Dallas VAMC.

*Id.*  Notwithstanding, there is no evidence that Griffin gave a "bad" reference to anyone.

Holland herself testified that she had no knowledge about what reference was given, and

her complaint was simply a "hunch" or a feeling. (App., pp.212-214).  On the other hand,

Jodi Molly-Strudwick, the deciding official at Orlando VAMC, asserts that she talked to

Griffin after McClellan referred her to Griffin. (App., pp.071-072).  Strudwick states that

Griffin gave Holland a general reference and seemed to have general knowledge about

Holland but the reference was not negative.  *Id.*  Strudwick did find it odd that McClellan,

the first line supervisor, would not provide the reference but referred her to Griffin. *Id.*

Strudwick further states that she had a number of other good candidates for whom she did

have more specific reference information so she did not further consider Holland. *Id.*

Ironically, it was Holland herself who indicated that she did not want McClellan giving

any references for her. (App., pp.50-51).  In the May 6, 2008 email to Griffin, Holland

states: "I continue to search for and apply to positions outside the OR that am qualified

for but remain concerned given that others seek Ms. McClellan as a reference." *Id.*  In

deposition, Holland stated neither Griffin nor McClellan should have given reference. (App., pp.228).  She gave Laakso the number to the human resources department to call for reference and that she did not want Laakso to call McClellan.  (App., pp.215-216). Thus, the uncontroverted evidence is that Griffin did not give Holland a "bad" reference and by Holland's own directive McClellan did not give a reference.

   **h.  Denial of work in Patient Safety:**  Holland claims that she was denied the opportunity to work in Patient Safety, on a temporary basis, for the purpose of "build[ing] upon [her] knowledge, skills, and experience." (App., pp.106-108). Griffin responded to her request by advising that she was needed in CCHT, wherein there was an RN vacancy.  *Id*.  Holland cannot show that the explanation given was a pretext for discrimination.

   **i.  Delayed step within grade increase:** Holland alleges that Griffin prevented her from obtaining a within grade increase in pay.  It is undisputed that within grade increases are calculated based on total time worked, with deductions for time off (LWOP).  (App., pp.90-93,146-147).  Holland had at least 4 ½ months of LWOP to make up at the time she complained. (App., pp.90-93).  It is undisputed that she later took additional leave between the end of May 2009 and July 2009, when she took the job at the Temple VAMC.  (App., pp.75, 76, 90-93).  Holland admited in deposition that she does not know who was responsible for the delay in within grade increase.  (App., pp.217-218).  Rather, she claims that the Temple VAMC corrected the error.  *Id*.  While it is true

that the Temple VAMC issued the SF-50 to provide her the within grade increase, the effective date of the increase is August 30, 2009, *after* Holland left the Dallas VAMC. (App., pp.148).  Holland admitted that the increases are automatically calculated by the computer.  (App., pp.216).  However, she believes very strongly that Griffin, as the Chief of Nursing, had the power to delay her increase and did delay it in retaliation but she has no proof.  (App., pp.219).  Her only proof is her strong feeling.  *Id.*

Because Holland cannot show a causal link between her protected activity and the VA's alleged failure to promote her and because Holland cannot present evidence raising a genuine issue of material fact whether those reasons for management decisions and actions are actually a pretext for retaliation, Holland's retaliation claim fails.

**D.      Holland's Claim Of FMLA Interference Fails**

In her third cause of action, Holland alleges that the VA interfered with her right to FMLA leave.  Complaint, p. 8.  However, Holland requested leave under FMLA on June 6, 2008 and Griffin approved her request on June 13, 2008.  (App., pp.033-037, 038, 127-130).

**1.      Requirement For FMLA Interference Claim**

Under the first set of substantive rights or entitlements under FMLA, the employer may not "interfere with, restrain, or deny the exercise of, or the attempt to exercise," any right under FMLA.  29 U.S.C. § 2615(a)(1).  In the context of an interference claim, once the employee has met the statutory requirements, she is entitled to leave under the FMLA. As such, the employer's intent is irrelevant.  *Mauder v. Metro. Transit Auth.*, 446 F.3d

574, 580 (5th Cir.2006).

In order to establish a prima facie case of interference under the FMLA, an employee must demonstrate only that she was entitled to a benefit that was denied. *Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc*., 464 F. Supp. 2d 562, 567, (E.D.L.A. 2006), *see also Strickland v. Water Works & Sewer Board*, 239 F.3d 1199, 1206-07 (11th Cir. 2001)(*citing O'Connor v. PCA Family Health Plan, Inc*., 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999); *see also* 29 U.S.C. § 2615(a)(1).  Other federal courts have required a plaintiff in FMLA interference cases to establish five elements: (1) that she is an eligible employee; (2) that the defendant is an employer under the FMLA; (3) that she was entitled to leave under FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under FMLA. *See Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc.*, 464 F. Supp. 2d 562 at 567, *see also, e.g. Garraway v. Solomon R. Guggenheim Found.*, 415 F. Supp. 2d 377, 382 (S.D.N.Y. 2006).  Under either test, Holland's claim fails because Holland's request for leave under FMLA was approved.

### 2.     The Allegations

Holland makes allegations attempting to show interference with her exercise of her FMLA rights.  However, the uncontroverted evidence shows that there was no interference with Holland's rights to leave under FMLA and that her request for leave under FMLA was approved.

    a. **May 6 email sent to employees with no need to know:** Holland alleges that her May 6, 2008 email was forwarded by Griffin to people who had no need to see it. (App., pp.50-51).  It is undisputed that the only four people to whom Griffin forwarded that email were McClellan, Mariamma Kurian (Kurian), Chris Seaton (Seaton), and Florine McCall (McCall). *Id*.  In her deposition in this case, Holland asserts that the people who did not have a need to know were Chris Seaton and Kenneth Carroll, the Agency's legal counsel.  (App., pp.195-196).  She complained that those persons had no need to know about her EEO complaint.  *Id*.  However, her May 6, 2008, email does not reference an "EEO" complaint. (App., pp.50-51).  Rather, it merely references a "complaint against Ms. McClellan."  *Id*.  In the case of Kenneth Carroll, it is clear that Holland is mistaken that it was sent to him because the email string does not contain his name.  Notwithstanding, as legal counsel for VA and the person who handled all of Holland's EEO complaints at the administrative stage, clearly he is entitled to view all evidence, including the May 6 email.  In the case of Seaton, he is an HR representative who handles Nursing Service.  (App., pp. 127-130).  The argument that he has no need to see Holland's email is specious, because it is his job to assist Nursing Service in all complaints and leave issues.  *Id*.

    b. **Discussion of medical condition in open area:** On June 13, 2008, Holland acknowledged to McClellan, her supervisor, that her request for FMLA leave had been approved.  (App., pp.58).  Holland admits that this complaint involves a

telephone call with Kurian and Griffin, regarding her request for FMLA.  (App., pp.203-206). Griffin and Kurian were on a conference call with Holland. (App., pp.127-130). Kurian (Holland's second-line supervisor), Chris Seaton (HR Manager), Richard Shaw (Holland's union representative were all in Griffin's office during the telephone call. *Id.* Griffin and Kurian did not know Holland's location while she was on the phone.  *Id.* Although Holland claims that she was forced to give medical information in an open area, she does admit that she could have simply told Kurian and Griffin that she needed to go to another phone, but she did not. (App., pp.202-207).  Rather, Holland asserts only that she felt that she did not have any choice, "I was so sick."  (App., pp.206). Griffin and Kurian informed Holland that her leave request was approved and informed her they needed original documents.  (App., pp.127-130).  No medical information was requested or given. *Id*. There simply is no evidence that Holland was "forced" to talk about her medical condition at that time of her phone conference with Griffin and Kurian.

      **c.**  **Refused to confirm Holland's FMLA request:** Holland admitted in deposition that her FMLA request was approved.  (App., pp.201).  Moreover, Holland confirmed on two separate occasions her understanding that Griffin had notified her that her request for leave under FMLA was approved. (App., pp.001-002, 038).

      **d.**  **Forced to return to work despite her leave request; Refused to give Holland time off:**  Holland returned to work in September 2008.  Holland alleges Griffin denied her request to begin work at 7 a.m. and denied her request to take off one day

every two weeks.  Complaint, p. 5.  In her reasonable accommodation request filed at the time she returned to work in September 2008, Holland stated that her "disability" was temporary and that she wanted to begin work at 7a.m. "to avoid heavy traffic" and one day off would help her catch up with her sleep. (App., pp.006-007).  Griffin responded by advising Holland that she could have off the one day every two weeks that she requested. (App., pp.104).  She further advised Holland that she would be assigned temporarily to the Flu Clinic "for the next several weeks," beginning at 7:30 a.m. *Id.* She also advised that she did not have a shift beginning at 7 a.m.  *Id*.  There is no legal requirement that an employer change its work hours to accommodate someone claiming a disability.   Even so, Holland simply wanted the 7 a.m. start time "to avoid heavy traffic" and not to accommodate a disability.  Finally, Holland was assigned to CCHT in November 2008. (App., pp.127-130).  Holland admits that (1) she was allowed to come to work at 7 a.m. at CCHT, (2) that Griffin never told her she could not have off one day off every two weeks, and, (3) Holland never asked for a day off in the middle of the week while in CCHT, but never had a leave request denied. (App., pp.134-136).

Holland is unable to establish elements of her FMLA Interference Claim.  The uncontroverted summary judgment evidence shows that Holland's request for leave under FMLA was never denied; it was approved.  (App., pp.001-002, 038). Despite Holland's claim that the VA unlawfully interfered with her right to leave under FMLA, the evidence shows that she was not denied leave under FMLA and that she was on leave from June 16, 2008 to September 2008, just as she requested.  (App., pp.229).  Shinseki is thus

entitled to summary judgment on Holland's claim of FMLA interference**.**

**E.      Holland's Claim Of FMLA Retaliation Fails**

In her fourth complaint, Holland alleges that the VA retaliated against her because she exercised her rights under FMLA.  However, her claim fails because she cannot establish critical elements.

**1.      Requirement For FMLA Retaliation Claim**

The Federal Medical Leave Act (FMLA) provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. §2612(a)(1)(D) (2002).

FMLA contains two distinct provisions.  *Mauder v. Metro. Transit Auth. of Harris Co., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006).  The first provision of the FMLA creates a series of entitlements or substantive rights.  An employee's right to return to the same position after a qualified absence falls under this category.  *Id.*   The second provision of the FMLA is proscriptive, and protects employees from retaliation or discrimination for exercising their rights under the FMLA.  *Id.*; *see also* 29 C.F.R. §825.220(c)(1997)("An employer is prohibited from discriminating against employees who have used FMLA leave.")

In order to establish a prima facie case of retaliation under FMLA, the employee

must show the following: 1) she was protected under the FMLA; 2) she suffered an adverse employment action; and 3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder*, 446 F.3d at 583; *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001). If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to provide a legitimate nondiscriminatory or non-retaliatory reason for its actions.

Here, Holland claims that the alleged unlawful retaliatory acts occurred because she sought protection under the FMLA. Complaint, p.8. However, Holland cannot establish a prima facie case of FMLA retaliation because she cannot show she was treated less favorably than an employee who had not requested leave under the FMLA. Additionally, Holland cannot show that any alleged adverse decision was made because she sought protection under the FMLA.

**2.     The Allegations**

   **a.   Refused to interact with Holland regarding her FMLA request:**

Holland first requested leave under FMLA on June 6, 2008 and her leave was approved on June 13, 2008. (App., pp.229). Summary judgment evidence demonstrates that Griffin and others interacted with her concerning her FMLA leave request, which was approved.

   **b.   Refused to accommodate Holland's disability:** Summary judgment evidence shows that Holland was not a "qualified individual with a disability" under the

ADA.  See discussion, *supra*.  In her request for accommodation, Holland did not describe any major life activities that she could not perform, only that she could not come to work because of the "toxic environment" and that she wanted reassignment to a new position. (App., pp.006-007).   Nonetheless, summary judgment evidence also demonstrates that the VA worked with Holland to help address her work related issues by approving her leave and by helping her to find temporary work assignments upon her return from her FMLA leave in September 2008.  *See* discussion, *supra*.

       c.  **Refused to promote or interview Holland for other VA positions:** As shown above, the VA has articulated legitimate business reasons for  any alleged adverse decision for which Holland complains, particularly as to any promotion or reassignment decisions. *See* discussion, *supra.*

      Once the complaining party establishes a prima facie case, the burden shifts to the defendant to prove that there were legitimate business reasons for management decisions. See 29 C.F.R. § 825.216(a).  Thereafter, the burden shifts back to the Holland to show by preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation.  *Mauder,* 446 F.3d at 583 (citing *Hunt*, 277 F.3d at 768).  Holland cannot show any evidence of pretext beyond her hunches and beliefs.  Holland's speculations and subjective beliefs are insufficient to defeat summary judgment. *Turner*, 476 F.3d at 343.

**F.**    **Holland's Claims Of Retaliation Because Of Protected Activity Fail**

1.      **Requirement For Title VII Retaliation Claim**

To assert a claim of retaliation under Title VII, a plaintiff with only circumstantial evidence must satisfy the burden-shifting standard outlined in *McDonnell Douglas*. *McDonnell Douglas Corp.,* 411 U.S. at 802.  First, the plaintiff must a establish prima facie case of retaliation that meets three elements:  1) that she engaged in activity that is protected by Title VII, 2) that the employer took adverse employment action against her, and 3) there is causal connection between protected activity and adverse employment action.  42 U.S.C.A. §2000e-3(a), *Brazoria Co., Tex. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004).   The employee must demonstrate that the employer knew about the employee's protected activity.  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).

In a retaliation claim, an adverse employment action is one that "a reasonable employee would have found...[to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry Co.*, 548 U.S. 53, 68 (2006).  The purpose of this objective standard is "to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing.  *Stewart v. Miss. Transp. Comm'n*.  586 F. 3d   331 (2009), citing *Burlington N.*, 548 U.S. at 68.  "'Petty slights, minor annoyances, and simple lack of good manners'" are not actionable retaliatory conduct that would dissuade a reasonable employee from making a charge of

discrimination. *Id*. "'The significance of any particular act of retaliation will often depend upon the particular circumstances. Context matters.'" *Id*. If the context shows no adverse impact as a result and no blame can be attributed to the employee that "might carry a stigma in the workplace," an employment action is not an adverse action. *Id.* Adverse employment action, as element of Title VII retaliation claim, is not limited to Fifth Circuit's "ultimate employment decision" standard for discrimination claims under the statute.

If the plaintiff succeeds in making a prima facie case of retaliation, a presumption of discrimination arises, and the burden shifts to the defendant employer,, to provide a legitimate nonretaliatory reason for the adverse employment action. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004). If the employer succeeds, under the *McDonnell Douglas* framework the presumption of discrimination falls away and the plaintiff must show that the employer's articulated reason for its action is merely a pretext for retaliation, of if true, is only one reason for its conduct and another motivating factor is plaintiff's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). The Plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir.2007). The plaintiff can show pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir.2003), *quoting Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

### 2.    Allegations

Holland alleges that the VA failed to promote her, subjected her to a hostile work environment, prevented her from transferring, reassignment, or obtaining another position within the VA and delayed providing her pay increase.  However, as demonstrated above, these allegations fail because  Holland cannot show that the alleged unlawful retaliatory acts occurred because she engaged in protected activity.  Holland cannot establish a prima facie case of retaliation because she cannot show she was treated less favorably than an employee who had not engaged in protected activity.  Additionally, Holland cannot show that any alleged adverse decision was made because she engaged in protected activity.

### G.    Holland's Claims Of Hostile Work Environment Fail

### 1.    Requirement For Hostile Work Environment Claim

Title VII prohibits harassment based on an employee's protected status that is so "severe and pervasive" as to "alter the conditions of [victim's] employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1986)(*quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

To establish a harassment/hostile working environment claim, Holland must establish the following essential elements by a preponderance of the evidence: 1) she is a member of a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was based on the protected class; and 4) the harassment was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment. *Cottrill v.*

*MFA, Inc.*, 443 F.3d 629, 636 (5th Cir. 2006), *citing, Schoffstall v. Henderson*, 223 F.3d 818, 826 (8th Cir. 2000); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)(addressing a claim of a racially-hostile work environment; see also, *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003); *Farpella Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996).

>    2.    **Allegations**

Holland claims that after she was charged with AWOL on March 7, 2008, McClellan (1) reprimanded her regarding an instrument count, (2) charged her with not being in her OR room on a timely basis, (3) threatened her with firing for leave usage, and (4) scrutinized her OR room. When pressed for proof that she was being reprimanded or falsely accused of being late and losing instruments, her only proof these were false was that she had filed an EEO complaint and that her supervisor had "lied before." (App., pp.191-192).  Additionally,  the undisputed evidence shows that all of these events occurred prior to Holland's May 6, 2008, email to Griffin, where Holland's complained that these are the reasons she had to request LWOP.  (App., pp.50-51).  Moreover, to the extent Holland claims that these events caused Holland to file her EEO complaint, these cannot form the basis of any claim of retaliation.  *Id.*  Holland claims that she filed the complaint because of these events. *Id.*  Further, these allegations fail because  Holland cannot show that the alleged unlawful conduct or acts are so severe as to rise to the level of a hostile work environment.

>    a.  **Instrument count:**  This incident occurred on May 1, 2008, before

Holland filed a formal complaint of discrimination.  A May 1 email from McClellan to Holland and Kara Francois summarized what occurred.  (App., pp.44).  In the email, McClellan states that the meeting was "to review with Kara Francois (periop intern) case flow/patient care issues I had when I relieved in that room."  *Id.*  McClellan notes only that Holland was "present because she was preceptor for Kara on that day."  *Id.*  There is no evidence that McClellan accused Holland or blamed Holland for the issue discussed, nor is there any evidence that she was ever disciplined.  Holland admitted in deposition that she does not know whether the instrument count was incorrect.  (App., pp.___).  Under those circumstances, McClellan's discussion of the issue with Holland and the intern was not hostile, but simply a part of her supervisory duties.

      **b.  <u>Failure to be in OR Room:</u>**  This event occurred on April 30, 2008, again prior to Holland filing any formal EEO complaint.  (App., pp.052).  In an email to Holland and two other nurses, McClellan advised that nurses were required to be in their assigned rooms by 8:30 on Wednesdays, but that those three nurses were still in the lounge area at 8:40 a.m. (App., pp.052).  Holland, like the other nurses, was not singled out or disciplined, but rather simply "reminded" of that rule. *Id*.  More significantly, however, Holland admits that she was not in her room on a timely basis and she was, indeed, late.  (App., pp.189-190).

      **c.  <u>Leave usage:</u>**  Holland alleges that in June, McClellan discussed the difficulties of granting leave in two separate meetings. (App., pp.197).  Holland admits

that she was not singled out in any discussion of leave usage, but that these were general meetings of all employees under McClellan. (App., pp.197-201).  Holland admitted she does not know whether other employees had requested leave during the same time period. (App., pp.197-201).   More importantly, however, these meeting were after Holland had requested leave in her May 6, 2008 email, but no adverse action was ever taken against Holland as a result of all of the FMLA and LWOP she took thereafter.

       **d.  Scrutinization of OR Room:**  Holland alleges that after she was charged with AWOL for March 7, 2008, McClellan began "scrutinizing" her OR room, because of the March 7, 2008 AWOL.  (App., pp.178, 187). Significantly, assuming that there was any change in the way McClellan did her job, that would have been prior to Holland filing any EEO complaint.

       **e.  Proficiency rating:**  Holland alleges that in June 2009, after she had accepted the Temple VAMC job, Regina Strowd provided her a proficiency rating that was below what she usually obtained. Complaint, p.6.  Ironically, the prior higher ratings would have been from McClellan, a person she claims discriminated against her, since she worked for McClellan in the two previous years.  Nevertheless, it is undisputed that Holland spent almost the entire rating year on LWOP or in temporary assignments.  It is thus not clear why she believes that she should have been given a higher than satisfactory rating. (App., pp.079-089). A "high satisfactory" is given only when an employee has "met all criteria, usually exceeds expectations by a substantial margin." *Id.* Yet, in

Holland's written complaint to Strowd, she primarily complains that the Report contains the statement "was out on extended leave" and the reference to her leave be removed. (App., pp.079-089).  Strowd met with Holland and responded by removing the "extended leave" comment from the Proficiency Report. *Id.*  Strowd rated Holland according to "the time she was at work."  Strowd also informed Holland that she could provide additional information that might justify a higher rating. *Id.*  However,  Holland never provided any additional information to Strowd. *Id.*  There is no evidence that Strowd was motivated by any discriminatory animus.  Significantly, Holland did request and receive a strong letter of reference from Strowd in March 2009.  (App., pp.154).

      **f.  Claim that AWOL was not removed:** Holland and three other nurses were charged with AWOL for March 7, 2008, after they failed to arrive at work during a severe weather day. (App., pp.114-124).  Holland alleges that the AWOLs were removed as to the other three nurses, but not as to her, as a retaliation for her EEO complaint and/or for her use of FMLA. (App., pp.179).  In fact, Holland's AWOL was removed at the same time as the other nurses.  (App., pp.070).  Mariamma Kurian, Holland's second-line supervisor, issued an email on November 26, 2008, instructing that the AWOLs for all four nurses should be removed.  (App., pp.059).  Thereafter, Holland's AWOL and her co-workers' AWOLs were all removed.  (App., pp.070).

      **g.  Refusal to cancel NNEI debt:** Holland alleges that the VA failed to cancel her NNEI debt to the VA in retaliation for her filing her EEO complaint.  NNEI is

a program in which the VA pays for an employee's education, conditioned that he or she remain with the VA for a specified period of time after the completion of his or her educational program.  (App., pp.097-100).

In Holland's case, she completed her educational program in August 2008.  Thus, her obligation to remain employed with the VA extended to August 2011.  (App., pp.097-100).  The VA denied Holland's request for cancellation on the sole ground that she was not in default, e.g., she was still employed by the VA and had not otherwise failed to begin repaying the debt.  (App., pp.094-095).  Holland's request was premature since her agreement with the VA was not due to be canceled until August 2011. (App., pp.094-095, 097-100).  Holland is currently employed at the VA Temple hospital, still in the VA system. (App., pp.___).  That the request was premature and that the VA's response was appropriate is demonstrated by the fact that Holland remains employed with the VA with only a few months before the end of her obligatory employment period. (App., pp.094-095, 097-100).

### 3.    Holland Is Unable To Establish The Alleged Hostile Work Environment Was Based On Any Prohibited Basis

Holland fails to establish the third element of her prima facie case of hostile work environment and she is unable to present any evidence that the alleged harassment was based on her disability or any prohibited basis.  Holland fails to show that any of these incidents or decisions for which she complains took place because of  Holland's disability or any other prohibited basis.

Absent evidence that the alleged harassment was based on a protected characteristic, summary judgment must be granted in favor of the employer.  *See, e.g, Vallecillo v. U.S. Dep't of Hous. and Urban Dev*., 155 Fed. Appx. 764, 767 (5th Cir. 2005) ("Accepting all of the incidents that Vallecillo lists as true, none are related to his protected status."); *Harilall v. University Health Sys. Dev. Corp*., No. 98-50652, 1999 WL 152923 at *2 (unpublished) (5th Cir. 1999)(noting that the incidents of harassment recounted by plaintiff are all common workplace occurrences and not based on a protected characteristic); *Skinner v. Brown*, 951 F. Supp. 1307, 1322 (S.D. Tex. 1996), *aff'd,* 134 F.3d 368 (5th Cir. 1997) (table) (noting there was no evidence that conduct was motivated by race).  Holland cannot establish a hostile work environment claim because she does not have any evidence to show that the complained of actions resulted because of any prohibited basis.  Holland offers no more than her subjective beliefs and conclusions to support her claims, which are insufficient. Summary judgment in favor of Shinseki is therefore appropriate.

**4.    Holland Is Unable To Establish That The Alleged Hostile Work Environment Affected A Term, Condition Or Privilege Of Employment**

Holland's allegations also fail to establish the fourth element of her prima facie case, that is, that the alleged harassment affected a term, condition, or privilege of his employment.  "For harassment . . . to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim . . ., it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment.'" *Ramsey*, 286 F.3d at 268.  To be actionable, the challenged

conduct must create an environment that a reasonable person would find hostile or

abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).       Whether an

environment is hostile or abusive depends on the totality of the circumstances.  This

includes the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance. *Id.*  To survive summary judgment, a

plaintiff must submit proof of severe or pervasive conduct that can be characterized as

"extreme." *Faragher*, 524 U.S. at 788.  Crucial to this inquiry is whether the alleged

conduct unreasonably interfered with the plaintiff's work performance. *Turner*, 476 F.3d

at 347.

Even accepting Holland's unsubstantiated assertions as true, they do not rise to the

level of a hostile work environment. Shinseki contends that even if all of the foregoing

unsubstantiated assertions and allegations are deemed to be true, they still do not rise to

the level of constituting a hostile work environment. Even assuming, arguendo, that

Holland meets the first two elements of her hostile work environment claim, Holland is

unable to establish that the alleged harassment was based on any prohibited basis or that

any alleged harassment affected a term, condition or privilege of her employment.

As this Court and others have noted, Title VII is not a "'general civility code.'"

*Faragher*, 524 U.S. at 788 (*quoting Oncale v. Sundowner Offshore Services, Inc.*, 523

U.S. 78, 80 (1998). It does not require managers to be nice.  It simply requires them to not

engage in a sever and pervasive impermissible conduct.  For the most part, Holland is complaining of common workplace occurrences all within the discretion of management. It is not unusual for a supervisor to reprimand employees or scrutinize their work or insist that nurses are in their assignment operating rooms, as appropriate.

Such conduct cannot be characterized as "extreme."  *Ramsey*, 286 F.3d at 268 (The Fifth Circuit held that the supervisor's alleged misconduct was insufficient to state a prima facie case of a hostile work environment where plaintiff complained that she felt belittled and humiliated by her supervisor's yelling and sharp looks and her supervisor called her a liar and a disloyal employee in front of co-workers and customers.).  Despite the foregoing belittling and humiliating conduct and name calling, and the emotional effect that it had on the plaintiff, the Court in *Ramsey* noted that plaintiff's "allegations fall far short of setting forth the requisite elements of a prima facie claim of a hostile working environment." *Id.* at 270.

In *Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871 (5th Cir. 1999), where the alleged harasser engaged in a course of boorish and offensive behavior (making sexually suggestive comments and touching the plaintiff's arm) that spanned a period of time over a year the Fifth Circuit affirmed the District Court's grant of summary judgment and stated that "we find similarly that Moore's stares and the incidents in which he touched Shepard's arm, although they occurred intermittently for a period of time, were not severe."  *Shepherd*, 168 F.3d at 874; see also, *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1251 (11th Cir. 1999), *cert. denied*, 529 U.S. 1068

(2000)(actions of supervisor who constantly followed plaintiff and stared at her in an "obvious fashion" did not rise to the level of severe or pervasive); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998)(incidents involving staring and unwanted touching did not rise to the level of severe or pervasive).

It should be noted that the alleged harassers' conduct in *Ramsey*, *Shepard, Mendoza* and *Adusumilli* were more severe than Holland's alleged bad conduct in this case.  Nonetheless, the courts in those cases granted summary judgment in favor of the employers.  Accordingly, Holland has failed to establish that the unwelcome conduct that she alleges she was subjected to was so severe or pervasive that it rises to the level of a hostile working environment.  Shinseki is therefore entitled to summary judgment on Holland's hostile work environment claim.

## IV.

## CONCLUSION

For the foregoing reasons, this Court should grant Shinseki's motion for summary judgment.  Further, the Court should dismiss Holland's claims against Shinseki with prejudice, tax costs against Holland, and grant Shinseki all such other relief to which he is entitled.

Respectfully submitted,

JAMES T. JACKS
United States Attorney

/s/ T.J. JOHNSON
T. J. JOHNSON
Assistant United States Attorney
Texas Bar No. 10794175
1100 Commerce Street, Third Floor
Dallas, Texas  75242
Tel: 214.659.8600
Fax: 214.676.2916
Email: tj.johnson@usdoj.gov

OF COUNSEL:
Ken Carroll
Assistant Regional Counsel
US Department of VA
Office of Regional Counsel
4500 South Lancaster Road
Dallas, Texas  75216

## CERTIFICATE OF SERVICE

I hereby certify that on 6th day of June 6, 2011, I electronically submitted the attached motion with the clerk of court for the United States District Court for the Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

*s/ T. J. Johnson*
T. J. Johnson
Assistant United States Attorney