UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOANNE HOLLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 10-CV-0908-B |
| | § | |
| ERIC K. SHINSEKI, | § | |
| SECRETARY | § | |
| UNITED STATES DEPARTMENT | § | |
| OF VETERAN AFFAIRS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (doc.20), filed June 6, 2011.

For the following reasons, the Court finds Defendant's Motion should be and hereby is **DENIED** in

part and **GRANTED** in part.

I.

BACKGROUND[1]

This matter presently before the Court arises in the context of a discrimination and

retaliation suit filed by Plaintiff Joanne Holland ("Holland") concerning events that occurred while

she was employed by the Dallas Veterans Affairs Medical Center ("Dallas VA"). Plaintiff alleges that

while employed by the Dallas VA, Defendant (1) discriminated against her by failing to provide a

---

[1] The facts are derived from the parties' pleadings and from the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed.

1

reasonable accommodation for her disability; (2) interfered with her rights under the Family and Medical Leave Act; and (3) retaliated against her for engaging in protected activity under the Rehabilitation Act, Family and Medical Leave Act, and Title VII.

A.      *Plaintiff's EEO Complaint*

Holland's employment as a nurse at the Dallas VA began in 2003. Pl.'s Resp. 2. In March, 2008, Holland worked as a nurse in the Dallas VA operating room. *Id*. The events underlying this suit began on March 7, 2008, when the Dallas area was affected by inclement winter weather. *Id*. at 3. On that same day, Holland contacted her supervisor at the Dallas VA and informed her that she was unable to safely commute to work due to the hazardous road conditions. Pl.'s App. 53. Despite her description of icy road conditions, Holland's supervisor and nurse manager Cathy McClellan ("McClellan") placed Holland on Absent Without Leave ("AWOL") status. *Id*.

Following her March 7, 2008 AWOL designation, Holland initiated an Equal Employment Opportunity ("EEO") complaint against McClellan, alleging that the AWOL designation constituted race and national origin discrimination. Pl.'s Resp. 3. On April 3, 2008, Holland contacted her EEO counselor's office. Pl.'s App. 51. Holland and her EEO counselor conducted an initial interview on April 9, 2008. *Id*. The EEO counselor notified the Dallas VA of the informal counseling session with Holland by mail on April 10, 2008. *Id*. at 52. The notification was received by the Dallas VA facility on April 15, 2008. *Id*. Afterwards, the EEO counselor conducted an interview with McClellan in which McClellan recounted her version of the events of March 7, 2008. *Id*. at 54. The EEO counselor also discussed the alternative dispute resolution process with the Dallas VA EEO Program Manager, Florine McCall ("McCall"). *Id*. at 52. On April 25, 2008, Associate Director of Patient Care Services Sandra Griffin ("Griffin"), McCall, and other Dallas VA officials declined to mediate

Holland's informal complaint through the alternative dispute resolution process. *Id.* at 61. Once notified of the declination, Holland filed a formal complaint of employment discrimination against the Dallas VA on May 17, 2008. *Id.* at 56.

According to Holland, after making her initial informal complaint with her EEO counselor, she was subjected to excessive and unwarranted scrutiny of her work performance by her supervisor. Specifically, Holland references an incident on May 1, 2008, in which McClellan reprimanded her for an alleged operating room instrument count, and an incident in which McClellan reprimanded her for being late to surgery. *Id.* at 20; Pl.'s Resp. 3.

Holland alleges that the increased scrutiny she received while working at the Dallas VA caused her to develop a number of medical ailments and disabilities. Holland states that during this time she began to suffer from anxiety, loss of concentration, weight loss, insomnia, depression, severe headaches, anemia, and heavy menstrual bleeding. Pl.'s Resp. 4. According to Holland, these conditions persisted throughout the events of this matter, and have continued to today. *Id.*

B.    *Plaintiff's Request for FMLA Leave*

On May 6, 2008, Holland sent an email to Griffin requesting one month of unpaid leave and reassignment on her return. Pl.'s App. 114. On May 21–22, 2008, Griffin corresponded with Dallas VA personnel concerning Holland's informal request for unpaid leave, and informed Holland to complete a written request for leave with her nurse manager (McClellan). Pl.'s App. 113. According to Holland, during two staff meetings that followed on May 28, 2008 and June 4, 2008, McClellan intimidated her by discussing, with other staff members present, the difficulties caused by granting leave and the consequences for taking unapproved leave. Pl.'s Resp. 5. On June 6, 2008, Holland requested leave by submitting a FMLA leave form with medical documentation to Griffin, along with

a letter seeking to exclude McClellan's involvement in the matter. Pl.'s App. 116–21. A few days later, on June 12, 2008, Holland emailed Dallas VA personnel, including Griffin, concerning the status of her FMLA leave request. *Id*. at 122–23. The parties exchanged correspondence regarding whether Holland's nurse manager, McClellan, was required to sign the leave request. *Id*. On June 13, 2008, Holland submitted her leave request to McClellan. *Id*. at 125. Later that day, Griffin and other Dallas VA personnel held a telephonic conference with Holland to discuss her request for FMLA leave. *Id*. at 79. Holland's request for leave was approved during the telephone conference. *Id*. at 126. Following the telephone conference, Holland sought written confirmation that her request for FMLA leave had been approved. *Id*. Holland went on unpaid leave beginning on June 16, 2008. *Id*.

Holland requested an extension of her FMLA leave on July 21, 2008. *Id*. at 131. According to Holland, she received written confirmation of her first request for FMLA leave on July 23, 2008, but did not receive written confirmation of her request for an *extension* of her FMLA leave. Pl.'s Resp. 6.

C.      *Plaintiff's Requests for Accommodation*[2]

On September 4, 2008, Holland contacted the Dallas VA by email, indicating her intent to return to work in a position that did not involve direct patient care and included a limited schedule restricted to the hours from 7:00 a.m.–3:00 p.m. with one day off every two weeks. Pl.'s App. 137–40. Griffin responded by informing Plaintiff that she would need to submit a request for a Reasonable Accommodation to the Reasonable Accommodation Committee. *Id*. On September 5,

---

[2] In its analysis, *infra*, the Court will address whether, and to what extent, Plaintiff's communications are to be considered separate requests for reasonable accommodation.

2008, Holland submitted a formal request for a Reasonable Accommodation, accompanied by a certification provided by her physician, indicating that Holland was "not able to provide adequate direct patient care". *Id.* at 132–36. Over the next several days, Holland continued to email Griffin, McCall, and other Dallas VA personnel, including Chris Seaton, Mariamma Kurian, and Richard Shaw about her Reasonable Accommodation request. *Id.* at 137–38. The Dallas VA then scheduled a meeting with Holland to discuss her Reasonable Accommodation request and informed Holland that the Dallas VA would no longer communicate with her via email. *Id.* at 141. At a September 29, 2008 meeting, Holland discussed a number of employment-related matters with Dallas VA personnel. *Id.* at 143. During the September 29, 2008 meeting, the Dallas VA declined Holland's Reasonable Accommodation request and the parties discussed other possible resolutions. *Id.*

On October 3, 2008, Holland emailed the Dallas VA, indicating that she had been upgraded by her doctor to provide direct patient care. *Id.* at 144–45. Holland's doctor requested that she not be assigned to work under her present supervisor (McClellan), and that she receive a limited schedule restricted to the hours from 7:00 a.m.–2:30 p.m. with one day off every two weeks. *Id.* In October, Holland returned to work and was placed by the Dallas VA in a temporary position in the Flu Clinic, assigned to the hours from 7:30 a.m.–2:00 p.m. Pl.'s Resp. 8. The record does not include any communications between Holland and the Dallas VA addressing the details of Holland's placement in this position. Further, the record is devoid of any indication whether Holland resisted placement in this position, or that this position affected her salary or benefits. In December 2008, Holland was placed in another temporary position as a Continual Care Home Telenurse ("CCHT"). Again, the record does not reflect details of Holland's reaction, if any, to her CCHT assignment. *Id.*

On December 12, 2008, Holland emailed the Dallas VA requesting reassignment to a

position in Patient Safety. Pl.'s App. 108. In her request, Holland identified the availability of a position under the Patient Safety Manager that would enable her to work the hours from 7:00 a.m.–2:30 p.m. *Id.* On that same day, Plaintiff's doctor submitted a letter notifying the Dallas VA that Holland's medical conditions persisted. Holland's doctor, however, recommended she was now capable of providing direct patient care and recommended the reduced work hours from 7:00 a.m.–2:30 p.m. *Id.* at 146. Griffin responded and informed Holland that the Dallas VA still needed her in CCHT and she remained therefore assigned to CCHT. *Id.*

On January 15, 2009, while in CCHT, Holland again emailed the Dallas VA requesting further accommodations. *Id.* at 64–65. By letter that same day, Plaintiff's doctor expressed concern for Holland's health and recommended Holland's reassignment with work hours from 7:00 a.m.–3:30 p.m. and one day off per week. *Id.* at 65. Plaintiff's doctor's letter made no reference to the status of Holland's specific symptoms or medical conditions. *Id.* On January 29, 2009, the Dallas VA responded by letter requesting additional medical documentation of her diagnosis and condition. *Id.* at 67. On March 12, 2009, Holland responded by providing an updated letter from her doctor that contained information relevant to her medical condition and reiterating her past accommodation requests. *Id.* at 73–75.

On April 6, 2009, while apparently still in CCHT, Holland submitted a formal request for Reasonable Accommodation, requesting one day off per week as sick leave or leave without pay in order to recover from sleep deprivation associated with insomnia, depression, panic, anxiety, and acute stress disorder. *Id.* at 71–72. The request was not signed by Holland's supervisor. *Id.* Shortly after submitting this request, in May 2009, Holland accepted a reassignment to the Temple, Texas Veterans Affairs Hospital ("Temple VA"). Def.'s App. 75, 76, 155–57. The record reflects no further

6

communications between Plaintiff and Defendant regarding Plaintiff's April 6, 2009 request.

D.  *Defendant's Allegedly Adverse Employment Actions Against Plaintiff*

According to Holland, the Dallas VA's actions during the foregoing course of events constituted unlawful discrimination and retaliation. Among these allegedly unlawful actions, Holland maintains that the Dallas VA failed to remove her March 7, 2008 AWOL designation status, but did remove that designation from her colleagues' records. *Id.* at 17; Pl.'s Resp. 9. Holland also alleges that in September 2008, the Dallas VA caused the withdrawal of a job offer from the Orlando Veterans Affairs hospital after providing a reference. Pl.'s App. 37; Pl.'s Resp. 10. Holland states the Dallas VA improperly denied her "within grade" salary increase in either February or March 2009, and provided a faulty performance review in May 2009. Pl.'s App. 39–42; Pl.'s Resp. 10. Holland also alleges that she was wrongfully denied several employment positions, promotions, and transfers based on her protected activity, including the positions of OR Nurse Manager and OR Assistant Nurse Manager and a position in Patient Safety. Pl.'s Resp. 9–11. Lastly, in May 2009, prior to her reassignment to the Temple VA, Holland complains that she received what she perceived as an inaccurate job review from her supervisor that inappropriately contained reference to her time on extended leave and conflicted with her supervisor's review of her performance. *Id.* at 10.

Based on all of the foregoing events and allegations, Holland filed the present suit containing the following claims against the Defendant: (1) failure to provide reasonable accommodation under the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 794 *et seq.*; (2) unlawful interference under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (3) unlawful retaliation under the Rehabilitation Act; (4) unlawful retaliation under the FMLA; and (5) unlawful retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended, 42 U.S.C. § 2000e *et seq*. On June 6, 2011, Defendant moved for summary judgment on all of Plaintiff's claims. The briefing is complete, and the motion ripe for decision.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the nonmovant bears the burden of proof at trial, the movant need not support its motion with evidence negating the nonmovant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. *Id*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must go beyond the mere pleadings and "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed R. Civ. P. 56(e)); *see Celotex*, 477 U.S. at 324. The evidence presented by the nonmovant must "support each essential

8

element of its claims on which it will bear the burden of proof at trial." *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the nonmovant. *Id.*

## III.

## ANALYSIS

The Court begins its analysis of the Defendant's motion for summary judgment with Plaintiff's claim that the Defendant failed to reasonably accommodate her under the Rehabilitation Act.

A.      *Failure to Accommodate under the Rehabilitation Act*

The Rehabilitation Act and the American Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12102 *et seq.* provide protections for individuals with a disability. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). The Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Dark v. Potter*, 293 Fed. App'x 254, 258 (5th Cir. 2008). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Although the Rehabilitation Act and the ADA may differ as to whom they apply, substantively, one mirrors the other. The same "remedies, procedures and rights available under the [Rehabilitation Act] are also accessible under the ADA." *Delano-Pyle v. Victoria Co.*, 302 F.3d 567, 574 (5th Cir. 2002) (internal citations omitted). More specifically, the Rehabilitation Act incorporates the ADA standards for analyzing an allegation of employment discrimination. 29 U.S.C. § 794(d). The Fifth Circuit has consistently noted that "jurisprudence interpreting either section is applicable to both."

9

*Kemp*, 610 F.3d at 234 (citing *Delano-Pyle*, 302 F.3d at 574). It is within this framework that the Court will analyze Plaintiff's claims under the Rehabilitation Act.

Prohibited discrimination under the Rehabilitation Act includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ." 42 U.S.C. § 12112(b)(5)(A). To prevail on a disability discrimination claim for failure to accommodate, Plaintiff is required to show: (1) the employer is covered by the statute; (2) she is a qualified individual with a disability; (3) the employer was aware of her disability; and (4) the employer failed to reasonably accommodate her disability. *See Mzyk v. N. E. Indep. Sch. Dist.*, 397 Fed. App'x 13, at *16 n.3 (5th Cir. 2010); *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009). A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations . . . ." 42 U.S.C. § 12111(9)(B).

Defendant has moved for summary judgment with respect to Plaintiff's failure to accommodate claim under the Rehabilitation Act on the following grounds: (1) Plaintiff does not have a disability; (2) Plaintiff is not a "qualified individual" under the statute; (3) Plaintiff, not Defendant, failed to engage in the interactive process; and (4) Defendant provided a reasonable accommodation.

1.      Whether Plaintiff has a Disability

Defendant moves for summary judgment, arguing that Plaintiff did not have a disability, and therefore, Plaintiff has no right to a reasonable accommodation under the Rehabilitation Act. Plaintiff counters that at all relevant times, she had a disability as that term is defined by statute and regulations.

For purposes of applying the Rehabilitation Act and the ADA, the definition of "disability" includes "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009).[3] The regulations implementing the Rehabilitation Act define a "physical or mental impairment" in part as "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 45 C.F.R. § 84.3(j)(2)(i)(B). Not every impairment, however, constitutes a disability. 29 C.F.R. § 1630.2(j)(1)(ii). Assuming Plaintiff has a physical or mental impairment, Plaintiff must also show that this impairment substantially limits a major life activity. The ADA Amendments Act ("ADAAA"), and the Fifth Circuit have recognized that sleeping and thinking constitute major life activities. 42 U.S.C. § 12102(A); *Chevron Phillips*, 570 F.3d at 614. In addition, the limitation placed on the major life activity by the impairment must be "substantial." To be substantial, an impairment must limit the ability of an individual to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). This standard is to be interpreted broadly in favor of expansive coverage. *Id.* Factors courts have considered to determine whether an individual is substantially limited in a major life activity include: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment." *Armstrong v. Boehringer Ingelheim, Pharm., Inc.*, No. 3:08-CV-1458-O, 2010 WL 2540751, at *15 (N.D. Tex. June

---

[3] The Fifth Circuit in *EEOC v. Chevron Phillips Chemical Co.* noted that the EEOC regulations and the regulations implementing the Rehabilitation Act adopted the same definitions of a physical or mental impairment. 570 F.3d at 614 n.5.

11

21, 2010).

Defendant maintains that Plaintiff was not disabled because Plaintiff's conditions constituted merely a temporary inability to work under one supervisor. Def.'s Br. in Supp. of Mot. Summ. J. ("Def.'s Br.") 14–15.[4] Plaintiff counters that at all pertinent times she was disabled because she suffered from a physical or mental impairment that substantially limited one or more major life activities. In support, she offers summary judgment evidence demonstrating that, on multiple occasions, her doctor informed the Dallas VA that Plaintiff suffered from "symptoms of major depression, panic, anxiety and acute stress disorder." Pl.'s App. 73, 144, 146. Plaintiff has also submitted evidence regarding whether she was substantially limited in the major life activity of sleeping. In her deposition, Holland states that her AWOL designation triggered her impairments, which have caused her to sleep, at times, only one hour a night, even with medication. Pl.'s App. 8, 185. In addition, according to a letter from Holland's doctor, the duration of her impairment persisted for many months after her return to work, and according to Holland, continues to this day. *Id.* at 4, 146. Holland's inability to sleep more than one hour a night supports a reasonable inference

---

[4] Defendant argues that a mental impairment cannot arise out of a mere personality conflict with a supervisor. Def.'s Br. 14–15. In support, Defendant cites *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000) and *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996). These cases, however, are distinguishable from the case at hand. First, both cases cited by Defendant occurred prior to the ADA Amendments Act of 2008 ("ADAAA") which broadened the standard for qualifying as disabled. 42 U.S.C. § 12102(4)(A). Second, the present case is distinguishable on the facts from Defendant's authority. In *Schneiker* and *Weiler*, the plaintiff sought simply to return to work under a different supervisor. The Seventh Circuit held that the plaintiff could not be considered disabled if the employee could still perform the job, just not under a particular supervisor. *Schneiker*, 200 F.3d at 1062 ("Standing alone, a personality conflict between an employee and a supervisor . . . is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor"); *Weiler*, 101 F.3d at 525 ("[I]f [the employee] can do the same job for another supervisor, she can do the job, and does not qualify under the ADA.") In this case, Plaintiff did not simply seek to avoid a particular supervisor, but also sought a modified work schedule to help address her insomnia.

12

that she was substantially limited in her ability to sleep. *See, e.g. Chevron Phillips*, 570 F.3d at 617 (finding plaintiff's testimony that she received only one to four hours of sleep a night over the course of several weeks was sufficient to survive summary judgment).[5]

Accordingly, the Court finds that Plaintiff has established a genuine issue of material fact as to the question of whether she suffered from a disability during the relevant time periods underlying this suit. The Defendant's motion for summary judgment as to this issue is therefore **DENIED.** Finding that her condition does not foreclose her reasonable accommodation claim, the Court, next considers whether Plaintiff was a qualified individual, whether the parties engaged in the interactive process, and whether Plaintiff was in fact reasonably accommodated.

2.     <u>Whether Plaintiff is a "Qualified Individual"</u>

a.     *What Was Plaintiff's Position ?*

The parties dispute the precise characterization of Plaintiff's job and its essential functions. In its motion for summary judgment, Defendant contends Plaintiff was not qualified because Plaintiff's position was that of an Operating Room Nurse, which required her to perform direct patient care. Holland argues, however, her position was much broader, and should be defined as a Nurse, for which she claims she was at all times qualified.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable

---

[5] The same cannot be said for Plaintiff's position that her condition substantially limited her ability to concentrate or think. In her deposition, Plaintiff merely states that she has suffered a loss of concentration. Pl.'s App. 4. Plaintiff has provided no summary judgment evidence regarding how she has suffered a loss of concentration. Plaintiff does not identify how her ability to concentrate has been diminished compared to that of an average person. Plaintiff produces absolutely no evidence of, for example, short-term memory loss, an inability to focus on simple tasks, or any other instance of decreased cognitive function. In order to survive summary judgment, however, the statute only requires Plaintiff establish that she suffered from a physical or mental impairment that substantially limited one major life activity.

13

accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8). In other words, to survive summary judgment, a Plaintiff must show that "(1) [s]he could perform the essential functions of the job in spite of [her] disability, or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)). The essential functions of a job "are those functions that bear more than a marginal relationship to a plaintiff's job." *Ketcher v. Wal-Mart Stores, Inc.*, 122 F. Supp. 2d 747, 751 (S.D. Tex. 2000) (citing *Washington v. Occidental Chem. Corp.*, 24 F. Supp. 2d 713, 728 (S.D. Tex. 1998)). Whether a particular function is essential may be determined by a number of factors, including but not limited to: "(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of allowing the employee to not perform the function; (5) the terms of a collective bargaining agreement; (6) past work experience of those holding the same position; and (7) the present work experience of those holding similar positions. *Id.* at 752 (citing 29 C.F.R. § 1630.2(n)(3)).

Defendant posits that Holland's position was an "Operating Room Staff Nurse," and that one of its essential functions is *direct* patient care. Def.'s Br. 8. In support, Defendant points to Plaintiff's own deposition testimony in which she unmistakably identifies her position as Operating Room Staff Nurse and details the responsibilities of the position, which included direct patient care. Def.'s App. 164–75. Holland, on the other hand, argues that her position was "that of a staff nurse who just happens to be assigned to the operating room." Pl.'s Resp. 16. In support, Plaintiff points to a January

14

29, 2009 letter from Griffin, who refers to Holland's position as that of a "Staff Nurse." Pl.'s App. 67.[6] Plaintiff's characterization of her job suggests that direct patient care was not an essential function, and therefore Plaintiff was at all times a qualified individual.

Upon review of the record, the Court observes that the summary judgment evidence, considered in the light most favorable to the Plaintiff, nonetheless establishes beyond peradventure that the Plaintiff's job was that of an "Operating Room Staff Nurse." Plaintiff's proof not only contradicts her own unequivocal deposition testimony on the point, but the letter she submits identifying her as a "Staff Nurse" contains no description of Plaintiff's job responsibilities. Because Plaintiff has failed to provide sufficient evidence that raises a reasonable inference that her job was a "Staff Nurse" and because the Defendant has supplied substantial competent proof that Plaintiff's position was that of an Operating Room Staff Nurse, the Court determines, as a matter of law, that Plaintiff's job at all relevant times was that of an Operating Room Staff Nurse, one of the essential functions of which was *direct* patient care. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2005 (internal citations omitted) (proper inquiry on summary judgment is "whether [the evidence] is so one-sided that one party must prevail as a matter of law").

        b.        *Was Plaintiff Able to Perform the Essential Functions of an Operating Room Staff Nurse?*

Defendant argues that Plaintiff's inability to provide direct patient care, along with her other symptoms, made her unable to perform the essential functions of an Operating Room Staff Nurse.

---

[6] In her Response, Plaintiff cites other documents (App. 168-73) that classify her position as a staff nurse. A review of Plaintiff's Appendix, however, shows that these supporting documents are absent from the record.

15

Plaintiff counters that she was at all times able to perform the essential functions of her job.

The summary judgment record reflects that, in September 2008, when Plaintiff first sought to return to work with a reasonable accommodation, Plaintiff—by her own and her doctor's admission—was unable to perform one of the essential functions of her job: direct patient care. Pl.'s App. 134, 137–40. In September 2008, Plaintiff was therefore, as a matter of law, not a qualified individual under the statute and, accordingly, not entitled to a reasonable accommodation from the Defendant. The Defendant's motion for summary judgment is thus **GRANTED** insofar as Holland's claim that she was entitled to a reasonable accommodation in connection with her September 2008 request.

Otherwise, the Court cannot discern from the summary judgment record, whether, in connection with her other requests for accommodation occurring after September 2008, Plaintiff was qualified to perform the essential functions of the job. For example, despite his September 2008 pronouncement that Plaintiff could not perform direct patient care, in October 2008, Holland's doctor informed the Dallas VA that Plaintiff had been upgraded to provide direct patient care. Pl.'s App. 144. With conflicting evidence from the parties on Plaintiff's qualifications to perform the essential functions of her job after September 2008, the Court determines that fact issues exist for a jury to resolve in this regard and **DENIES** the Defendant's motion for summary judgement to the extent it seeks a determination that Plaintiff was not qualified to perform the essential functions of her job after her September 2008 request for accommodation.

3.      Whether Plaintiff Failed to Engage in the Interactive Process

In its motion for summary judgment on Plaintiff's claim for reasonable accommodation under the Rehabilitation Act, Defendant argues Plaintiff failed to engage in the interactive process

16

prescribed by the Act. Plaintiff counters that it was in fact Defendant who failed to engage in the interactive process.

Generally, the employee with the disability is charged with the initial responsibility to inform the employer that an accommodation is needed. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (citing 29 C.F.R. § 1530.9, App. (1995)). "Once such a request has been made, the appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." *Id.* (internal quotation marks omitted). If an employer is unwilling to participate in good faith in the interactive process, the employer violates the statute. *See Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). The employee is held to the same expectations; if the employee is responsible for the breakdown in the interactive process, the employer cannot be found to have violated the statute. *See id.* The interactive process, however, "is not an end i[n] itself—it is a means to the end of forging reasonable accommodations." *Id.*

As mentioned, Holland submitted a formal Reasonable Accommodation Request on September 5, 2008.[7] Afterwards, the parties exchanged emails and conducted a meeting regarding Plaintiff's request. Pl.'s App. 137, 141, 143, 179. Defendant also informed Plaintiff that it would no longer communicate with Plaintiff via email. *Id.* at 141. At the meeting on or around September 29, 2008, the Dallas VA discussed Plaintiff's request with her and determined that Plaintiff was not

---

[7] In recounting the interactive process in connection with Holland's September 2008 reasonable accommodation request, the Court recognizes that its determination that Holland was not qualified to perform the essential functions of her job at that time precludes her from complaining about the interactive process in connection with that claim. Nonetheless, in addressing the Defendant's motion for summary judgment in connection with Plaintiff's claim that the Dallas VA failed to properly engage in the process with respect to her other requests, the Court finds that reviewing the entire course of events is necessary.

17

eligible to receive an accommodation because, *inter alia*, she could not provide direct patient care. *Id.* at 143. Accordingly, Defendant denied Plaintiff's reasonable accommodation request by letter on or around October 2, 2008. Def.'s App. 15–16. Plaintiff and Defendant, however, continued their communications regarding Plaintiff's reasonable accommodation request. On October 3, 2008 Plaintiff informed the Dallas VA that she had been upgraded to provide direct patient care. Pl.'s App. 144–45. As a result, in October, Plaintiff was placed in a temporary position in the Flu Clinic assigned to the hours from 7:30 a.m.–2:00 p.m., per her request. Pl.'s Resp. 8; Pl.'s App. 143. In December, Plaintiff was reassigned to CCHT with the same work schedule, until a permanent position could be found. Pl.'s Resp. 8. The undisputed summary judgment evidence demonstrates that in December 2008, Holland became dissatisfied with her accommodated position in either the Flu Clinic or in CCHT and sought a reassignment with limited work hours and one day off per week.[8]

The summary judgment record reflects that, over the course of the next several months, the parties remained in communication regarding Plaintiff's requests, even after she had been provided accommodation to two different positions. Pl.'s App. 65, 75, 146. Plaintiff repeatedly requested reassignment in December 2008, January 2009, March 2009, and through a formal request for reasonable accommodation in April 2009. Pl.'s App. 64–65, 71–75, 108.[9] Defendant submits that

---

[8] It is unclear from the summary judgment evidence whether Holland was working in the Flu Clinic or in CCHT at the time of her December 2008 communications. In either case, however, she was in an accommodated position.

[9] The parties dispute precisely how many reasonable accommodation requests Plaintiff made. Plaintiff appears to argue that each communication made by her to Defendant seeking reassignment should be considered a reasonable accommodation request. Defendant counters that Plaintiff actually only made requests for reasonable accommodation in September 2008 and April 2009. The Court agrees with Defendant's characterization based on the summary judgment record. Nonetheless, regardless of which of her

18

in response, it repeatedly requested additional medical documentation from Holland to consider her requests, and Holland responded to those requests, at times, with resistance. *Id.* at 60–62, 155–57.

With respect to her April 2009 request for reasonable accommodation, Plaintiff transferred to the Temple VA shortly thereafter in May 2009, apparently before further discussion had taken place. Def.'s App. 75, 76, 155–57. From September 2008 to Plaintiff's transfer to the Temple VA in May 2009, Defendant held a meeting to consider Plaintiff's request, provided an accommodation, and continued to communicate with Plaintiff regarding her requests, even going so far as to request additional medical information to possibly provide further accommodation. *See e.g.* Pl.'s App. 67. The undisputed summary judgment record provides no genuine issue of material fact as to whether either party failed to engage in the interactive process. Even assuming *arguendo*, that Defendant failed to engage in the interactive process, Plaintiff has failed to show she was denied a reasonable accommodation, discussed in Section III(A)(4), *infra*.

4.    Whether Plaintiff has Shown that Defendant Failed to Provide a Reasonable Accommodation

Defendant maintains that the Dallas VA provided Plaintiff with a reasonable accommodation from the time Plaintiff returned to work in October 2008 until Plaintiff left her position to work at the Temple VA in May 2009. Plaintiff counters by arguing that, despite Defendant's efforts, no such reasonable accommodation was made, because her temporary positions did not align with her skills and expertise, and further scheduling allowances could have been made. Pl.'s Resp. 8, 20.

In order to avoid summary judgment, a plaintiff must show that the employer failed to

---

requests are characterized as seeking reasonable accommodation, Plaintiff fails to demonstrate that the Defendant failed to reasonably accommodate her. *See* discussion in Section III(A)(4), *infra*.

provide a reasonable accommodation for her disability. *See Mzyk v. N. E. Indep. Sch. Dist.*, 397 Fed. App'x 13, at *16 n.3 (5th Cir. 2010); *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009). In relevant part, a reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). In providing a reassignment, however, "[t]he ADA does not require an employer to give an employee with a disability his job of choice . . . ." *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 622–23 (5th Cir. 2000); *see Myers v. Shell Deer Park Refining Co.*, 260 F.3d 622, 2001 WL 650451, at *1 (5th Cir. 2001).

Plaintiff contends that she requested a modified work schedule and a reassignment to a position commensurate with her skills and qualifications. Pl.'s Resp. 20. Plaintiff argues no such accommodations were made. Defendant argues that shortly after Plaintiff submitted additional documentation in October 2008 to support her September 2008 request, Defendant provided a reasonable accommodation in the form of a temporary reassignment to the Flu Clinic, and later to CCHT. Def.'s Br. 18. Plaintiff's reassignment to these positions lasted from September 2008 until May 2009, when Plaintiff accepted a new position at the Temple VA. *Id.* While assigned to the Flu Clinic beginning in October 2008, Holland was assigned the hours from 7:30 a.m.–2:00 p.m. Pl.'s Resp 8. During the next several months, however, Holland continued to request one day off per two weeks and reassignment. *Id.* at 8–9. Defendant notes, and Plaintiff does not challenge, that Plaintiff's temporary reassignments did not alter her title, salary, or benefits. Def.'s Br. 19.

While the Dallas VA refused her precise reassignment requests to specific positions, Holland fails to demonstrate how she was not provided a reasonable accommodation. It is clear from Holland's summary judgment evidence that she requested a reassignment, limited work hours, and

20

one day off per week—even if the position were only temporary. Pl.'s App. 143 (noting: "Ms. Holland also asked for temporary work until a permanent position can be found."). Plaintiff does not dispute that on her return from leave she was given two temporary positions in the Flu Clinic and later CCHT. Plaintiff does not suggest that either position had a different title, salary, or benefits as her prior position. In addition, Plaintiff does not dispute that she was assigned the hours between 7:30 a.m.–2:00 p.m. Pl.'s Resp 8. Plaintiff's primary contention is that she was placed in temporary assignments that were not commensurate with her skills and abilities, rather than in specific positions she preferred. While the Rehabilitation Act does allow for the reassignment of employees to a vacant position, it does not, however, force an employer to provide an employee with the employee's job of choice. *See Allen*, 204 F.3d 619. Even if a reassignment may not be ideal or may seem unfair, this alone is not enough to show the reassignment was discriminatory. *See id*. at 623.

In her Response, Plaintiff also alleges that she was "not allowed her one-day per week" on sick or annual leave. Pl.'s Resp. 9. In support, however, she merely cites a December 12, 2008 email exchange between her and Griffin seeking a reassignment to Patient Safety with limited work hours from 7:00 a.m.–2:30 p.m. Pl.'s App. 108. At no point in the exchange, however, does Holland request leave, nor is she denied a leave request. *Id*. Holland did, however, request leave of one day per week through her doctor on January 15, March 9, and April 6, 2009. *Id*. at 65, 72, 73. Plaintiff's evidence shows the Dallas VA responded by seeking additional medical information. *Id*. at 67. Plaintiff fails to show any evidence, however, that Defendant denied leave following these requests.

The summary judgment evidence illustrates that Plaintiff was provided a reasonable accommodation, but over time, became dissatisfied with her accommodation.  For all of these reasons, Plaintiff has failed to demonstrate that the Defendant failed to reasonably accommodate

her in accordance with the Rehabilitation Act and its applicable law and regulations. As such, Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's claim for failure to provide a reasonable accommodation.

B.    *FMLA Interference*

Holland maintains that the Dallas VA violated the FMLA during the series of events underlying this case. The FMLA was enacted, in part, to allow employees to take reasonable leave from their employment for medical reasons. 29 U.S.C. § 2601(b)(2). The FMLA contains two distinct provisions to effectuate this purpose. First, the FMLA creates a series of entitlements or substantive rights for employees taking leave under the act. *See Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 580 (5th Cir. 2006) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999)). Claims for violation of the these rights invoke entitlement or interference theories and are brought under 29 U.S.C. § 2615(a)(1). *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). Second, the FMLA contains a proscriptive provision that protects employees from retaliation for exercising their rights under the act. *See id.*

Under 29 U.S.C. § 2615(a)(1), an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). In order to establish a prima facie case of interference under the FMLA an employee must show (1) she was an eligible employee under the FMLA; (2) the employer was subject to the FMLA's requirements; (3) she was entitled to FMLA leave; (4) she gave notice to the employer of her intent to take FMLA leave; and (5) she was denied an entitlement under the FMLA, or the employer failed to respect the employee's FMLA entitlements. *See Morgan v. Neiman-Marcus Group, Inc./Neiman-Marcus Direct*, 2005 WL 3500314, at *4 (N.D. Tex. Dec. 20, 2005). Once the right to the benefit

22

is established, the employee is due the benefit, regardless of the intent of the employer. See *Nero*,

167 F.3d at 927.

Holland asserts that Defendant violated the FMLA in the following respects: (1) denial of

leave; (2) denial of written designation of leave; and (3) breach of confidentiality. Pl.'s Resp. 24.

Defendant moves for summary judgment on the grounds that Plaintiff cannot establish the fifth

element of her prima facie case, that Defendant denied Plaintiff an entitlement under the FMLA,

or failed to respect the Plaintiff's FMLA entitlements.

1.     Denial of Leave

Once an eligible employee requests leave "[t]he employer is responsible in all circumstances

for designating leave as FMLA-qualifying, and for giving notice of the designation to the

employee . . . ." 29 C.F.R. § 825.300(d)(1). "In any circumstance where the employer does not have

sufficient information about the reason for an employee's use of leave, the employer should inquire

further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R.

§ 825.301(a). "Once the employer has acquired knowledge that the leave is being taken for a FMLA-

qualifying reason, the employer must notify the employee as provided in § 825.300(d)." *Id.*

Subsection 825.300(d)(1) provides that when an employer has enough information to make such

a determination "the employer must notify the employee whether the leave will be designated and

will be counted as FMLA leave within five business days . . . ." 29 C.F.R. § 825.300(d)(1).

Defendant moves for summary judgment, arguing that the Dallas VA complied with the

FMLA in all respects with regard to Holland's request for leave. Plaintiff first requested leave by

email on May 6, 2008. When an employee requests leave, the employee "does not need to expressly

assert rights under the Act or even mention the FMLA to meet his or her obligation to provide

23

notice, though the employee *would* need to state a qualifying reason for the needed leave . . . ." 29

C.F.R. § 825.301(b) (emphasis added). Holland's May 6, 2008 request contains no qualifying reason

for her requested leave and merely states that her work environment had "affected [her] physically,

mentally, and emotionally." Pl.'s App. 113–14. In fact, Holland's May 6, 2008 request is devoid of

any other information that might illustrate how her request for leave is based on a FMLA-qualifying

reason. On May 22, 2008, Defendant responded to Holland's request of May 6 and inquired further

whether Holland's leave was potentially FMLA-qualifying. *Id.* On Friday, June 6, 2008, Holland, in

turn, provided Defendant with a formal FMLA request form and accompanying medical

documentation. Holland's June 6, 2008 request included information supporting the FMLA-

qualifying nature of her request, detailing that she suffered from a serious health condition and was

unable to perform the functions of her job. *Id.* at 117. At this point, the Defendant, in possession of

adequate information to determine whether Holland's request for leave was FMLA-qualifying,

approved her request. Specifically, in accordance with subsection 825.300(d)(1), five business days

later on June 13, 2008, Defendant verbally designated and approved Holland's request for FMLA

leave. *Id.* at 126–30. In sum, the undisputed summary judgment evidence demonstrates that

Defendant complied with the FMLA's regulatory scheme and did not deny or interfere with

Holland's rights under the FMLA with respect to her request for leave on May 6, 2008.

 2. Written Designation of FMLA Leave

 Holland further argues that the Dallas VA's June 13, 2008 verbal designation of FMLA leave

was inadequate and interfered with her rights under the FMLA because the notice was not provided

in writing in a timely fashion. Pl.'s Resp. 24–25; Pl.'s App. 126. In fact, there is no dispute that

Plaintiff did not receive *written* notice of her designation until July 23, 2008, in violation of the five-

day period prescribed in subsections 825.300(d)(1) & (d)(4). Pl.'s Resp. 25. The Fifth Circuit has noted, however, that "[a] regulation must not 'relieve[] employees of the burden of proving any real impairment of their rights and resulting prejudice.'" *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002)).[10] Rather, a court must conduct a case-by-case examination of whether a plaintiff has been prejudiced by the defendant's noncompliance with the regulation. *See Downey*, 510 F.3d at 541. In this case, Plaintiff's leave was designated FMLA-qualifying June 13, 2008. It is undisputed that Plaintiff then went on leave June 16, 2008. Plaintiff has not demonstrated that Defendant's delay in providing written notice on July 23, 2008 impaired Plaintiff's rights under the FMLA or resulted in prejudice.

Holland also argues Defendant's failure to provide written confirmation of her July 21, 2008 request for an *extension* of FMLA leave constitutes a violation of her FMLA rights. This argument also fails. First, the Department of Labor's regulations are clear that "[o]nly one notice of designation is required for each FMLA-qualifying reason per applicable 12-month period . . . ." 29 C.F.R. § 825.300(d)(1). Second, Holland cannot show she was impaired from exercising her right or was prejudiced by the lack of confirmation since it is undisputed that Holland's request for an extension of leave was immediately approved.

### 3.    Breach of Confidentiality

Plaintiff also claims Defendant interfered with her rights under the FMLA by releasing confidential medical records in violation of 29 C.F.R. § 825.500(g). In relevant part, the regulation

---

[10] In *Downey*, the Fifth Circuit addressed this issue in the context of 29 C.F.R. § 825.208. This regulation was later incorporated into 29 C.F.R. §§ 825.300–301. *See* The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934, 67999 (Nov. 17, 2008).

states that "[r]ecords and documents relating to certifications, recertifications or medical histories of employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential medical records . . . ." 29 C.F.R. § 825.500(g). "It is not settled whether this provision [825.500(g)] gives rise to a private right of action for disclosure . . . ." *Walker v. Gambrell*, 647 F. Supp. 2d 529, 539 n.5 (D. Md. 2009); *see also Ekugwum v. City of Jackson*, No. 3:09-CV-48-DPJ-JCS, 2010 WL 1490247 (S.D. Miss. April 13, 2010) (accepting the existence of a private cause of action without reaching the merits of the issue).

In this case, Defendant does not question the existence of a private cause of action under subsection 825.500(g), but merely challenges the sufficiency of Plaintiff's summary judgment evidence. The Court, therefore, will do the same, without reaching the merits of whether the provision creates a private cause of action. Assuming *arguendo* that 825.500(g) creates a private right of action, Plaintiff's summary judgment evidence fails. Plaintiff claims her medical records were improperly disclosed on two occasions: first, when Holland shared her FMLA forms with McClellan; and second, when she discussed her FMLA request over the telephone with Griffin and other individuals she could not identify. Pl.'s Resp. 26. Provision 825.500(g) allows, however, for an exception to the confidentiality requirement in that "[s]upervisors and managers may be informed regarding necessary restrictions on the work or duties of an employee and necessary accommodations." 29 C.F.R. § 825.500(g)(1). Defendant has put forth evidence that the only individuals engaged in the conversation about Plaintiff's FMLA leave were McClellan, Griffin, Holland's second-line supervisor Mariamma Kurian, Holland's Human Resources representative Chris Seaton, and Holland's union representative Richard Shaw. Holland fails to put forth any evidence that could lead to the conclusion that her confidential medical information was improperly

26

disclosed. *Cf. Ekugwum*, 2010 WL 1490247 (denying summary judgment because Plaintiff provided an affidavit stating that others had informed her that they had become aware of her confidential medical information).

In sum, with regard to all three of Holland's allegations that the Defendant violated the FMLA, she has failed to raise a genuine issue of fact with regard to the fifth prong of her prima facie case for FMLA interference. That is, Holland has failed to demonstrate through the summary judgment proof how the Defendant denied or failed to respect an entitlement under the FMLA. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for FMLA interference and its motion is **GRANTED** in that regard.

C.      *Disability Retaliation under the Rehabilitation Act*

Plaintiff argues that Defendant retaliated against her for requesting a reasonable accommodation and exercising her rights under the Rehabilitation Act. In its motion for summary judgment, Defendant contends Plaintiff failed to provide sufficient proof to either establish her prima facie case for disability retaliation or to show Defendant's justification of its actions were merely pretext for retaliation.

With respect to Plaintiff's claims for retaliation under the Rehabilitation Act, in the absence of direct evidence of retaliation, the Court will apply the *McDonnell Douglas* burden shifting framework to analyze such claims. *See Ryburn v. Potter*, 155 Fed. App'x 102 (5th Cir. 2005) (applying the *McDonnell Douglas* framework to retaliation claims under the Rehabilitation Act).Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation under the relevant statute. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Upon such showing, the burden shifts to the defendant to articulate a non-retaliatory reason for the challenged

27

employment action. *Id*. If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff to show that the defendant's stated reason was for the employment action was merely pretext for the real, retaliatory purpose. *Id*. at 804–05.

To establish a prima facie case of retaliation under either the Rehabilitation Act or ADA, a plaintiff must show (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). If a plaintiff can prove its prima facie case for disability retaliation, the burden shifts to the defendant to show a non-retaliatory reason for the alleged adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If a defendant satisfies its burden, the plaintiff must then show that the defendant's asserted reason was merely pretext for the real retaliatory purpose. *Id*. at 804–05. The Plaintiff need not show, however, that she suffers from an actual disability to maintain a retaliation claim under the ADA. *Tabatchnik v. Cont'l Airlines*, 262 Fed. App'x 674, 676 (5th Cir. 2008). A reasonable, good faith belief that the statute has been violated will be sufficient. *Id*.

1.     Plaintiff's Prima Facie Case

The parties do not dispute that Plaintiff engaged in activity protected under the ADA when Plaintiff submitted her September 5, 2008 request for a reasonable accommodation. Thus, Plaintiff satisfies the first element of her prima facie case. It is also undisputed that Plaintiff was subject to the following adverse employment actions identified in Plaintiff's Response: (1) denial of the OR Nurse Manager position; (2) denial of the OR Assistant Nurse Manager position; (3) denial of a position at the Orlando Veterans Affairs Hospital; (4) denial of a position in patient care; and (5) denial of a within-grade salary increase. Pl.'s Resp. 22. Thus, Plaintiff satisfies the second element of her prima

28

facie case.

The parties dispute the third element: whether there is a causal connection between the protected activity and the adverse employment action. The Fifth Circuit has noted that temporal proximity between an employee's protected activity and the adverse action may provide the causal connection required to meet the third element of a plaintiff's prima facie case. *Thomas v. Geren*, 393 Fed. App'x 182, 188 (5th Cir. 2010). "In fact, 'a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes'". *Id.* (quoting *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). Plaintiff's first request for a reasonable accommodation occurred in September 2008. Pl.'s App. 132. Plaintiff's second formal request came in April 2009. *Id.* at 71–72. During the time between formal requests, Plaintiff and Defendant remained in communication regarding Plaintiff's reasonable accommodation request, including multiple informal requests for additional accommodation. *Id.* at 65, 146. All of Plaintiff's aforementioned adverse employment actions occurred either within this brief time period while the parties remained in communication over Plaintiff's request, or within four months of the Plaintiff's formal requests. The facts in the summary judgment record show sufficient temporal proximity between Plaintiff's ADA protected activity and the adverse employment actions to establish a genuine issue of material fact as to the causation element of Plaintiff's prima facie case.

2.      Defendant's Legitimate Non-Retaliatory Reasons

Once Holland establishes her prima facie case, the burden shifts to Defendant to show legitimate, non-retaliatory reasons for the adverse employment action. *See*, *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden is one of production; "[i]f the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a [non-retaliatory] reason for the

adverse action,' then the employer has satisfied its burden." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). In making this determination, however, the Court's analysis cannot involve an assessment of credibility. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

Defendant articulates legitimate, non-retaliatory reasons for its challenged employment actions. With respect to the OR Nurse Manager position, Defendant states that initially, no candidates were selected for the position, and all of the candidates who were interviewed received higher scores than Defendant from the interviewing panel before forwarding those scores to Griffin. Def.'s App. 77–78, 127–30. Once the OR Nurse Manager position went unfilled, the OR Assistant Nurse Manager position was withdrawn entirely in order to allow the incoming Nurse Manager to have some input in determining who would become his or her assistant. *Id.* at 127–30. As for the denial of the Orlando position and the alleged poor professional reference, Defendant asserts that Griffin, rather than McClellan, provided a general reference to the Orlando VA after the Orlando VA sought a release from Holland. According to Defendant, this method of communication was in accordance with Holland's own request that McClellan not provide a professional reference. *Id.* at 50. Lastly, Defendant notes that Holland's within-grade salary increase was delayed because Holland still had to compensate for time she was on leave without pay ("LWOP") before she would be eligible for any increase. *Id.* at 90–93. Accordingly, Defendant has met its burden to articulate a legitimate, non-retaliatory reason for Plaintiff's stated adverse employment actions.

### 3.     Whether Defendant's Legitimate Non-Retaliatory Reasons are Merely Pretextual

Once a defendant establishes a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the proffered reasons were merely a

pretext for retaliation. *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999). The plaintiff must assert that the adverse employment action would not have occurred "but for" the protected activity. *See Lopez-Baca v. Geren*, 599 F. Supp. 2d 744, 758 (W.D. Tex. 2008) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001)). At this stage, the plaintiff's burden is more stringent than her burden to show a causal connection to establish her prima facie case. *Id.* "Plaintiff must produce substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998). Where the plaintiff does not specifically address the issue of pretext, the Court may consider evidence put forward as part of the prima facie case. *See Dick v. J.B. Hunt Transport, Inc.*, 772 F. Supp. 2d 806, 820 (N.D. Tex. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Plaintiff does not specifically address whether Defendant's proffered reasons for the adverse employment actions are merely pretext for retaliation. Plaintiff does, however, in the Court's view, provide enough evidence from the facts surrounding her prima facie case to raise a genuine issue of material fact as to whether Defendant's reasons are pretextual. Holland has offered evidence that Defendant sought to cease email communications with Holland. Pl.'s App. 141. Holland has also offered her own testimony that an improper performance review was placed on her record by someone other than her supervisor. *Id.* at 41–42, 82. Finally, Holland provides her own testimony stating she saw her records indicate her scheduled within-grade step increase, only to see the increase removed a week later, and become reinstated when she was transferred to the Temple VA. *Id.* at 39–40, 81. The Court finds such evidence as well as other facts in the voluminous record raise a genuine issue of material fact as to whether Defendant's proffered reasons are merely pretext for retaliation.

Accordingly, the Court finds that a genuine issue of material fact remains as to Holland's claim for disability retaliation under the Rehabilitation Act. Therefore, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's claims for disability retaliation under the Rehabilitation Act.

D.      *FMLA Retaliation*

Plaintiff argues that Defendant retaliated against her for requesting leave and exercising her rights under the FMLA. In its motion for summary judgment, Defendant contends Plaintiff failed to provide sufficient proof to show that Plaintiff suffered an adverse employment action, and failed to show proper causation necessary to establish her prima facie case for FMLA retaliation.

In the absence of direct evidence of retaliation under the FMLA, the Court will again apply the *McDonnell Douglas* burden shifting framework to analyze Holland's claims. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757(5th Cir. 2001) (applying the *McDonnell Douglas* framework to retaliation claims under the FMLA). Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of FMLA retaliation by showing (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was either treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder*, 446 F.3d at 583 (citing *Hunt*, 277 F.3d at 768. Once an employee makes such a showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id*. Thereafter, the burden shifts back to the employee to show that the employer's stated reason is mere pretext for the underlying purpose of retaliation. *Id*.

The parties dispute centers on whether Holland has established the second prong of her

32

prima facie case—that she suffered an adverse employment action. In determining whether an employment action is adverse under the FMLA, the Court applies the *Burlington* standard, which asks whether a reasonable employee would have found the challenged action materially adverse. *McCardle v. Dell Products, L.P.*, 293 Fed. App'x 331, 337 (5th Cir. 2008) (discussing *Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53 (2006)). "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace . . . .'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington*, 548 U.S. at 68). The Fifth Circuit has noted that "[w]hether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide." *McCardle*, 293 Fed. App'x at 337. At a minimum, Plaintiff has established a genuine issue of material fact regarding whether she suffered an adverse employment action when Defendant ceased engaging in email communication with Plaintiff and when she failed to receive promotions or transfers after her return from FMLA leave.

The parties also dispute whether Holland has established the third prong of her prima facie case—that she was either treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. In support, Holland argues that unlike other employees, her AWOL designation was not removed from her records. Pl.'s App. 17, 78. Holland also relies on the temporal proximity between Holland's return from FMLA leave in October 2008 and her alleged adverse employment actions. Assuming Holland suffered an adverse employment action, Holland has produced sufficient evidence to establish a genuine issue of material fact regarding whether she was either treated less favorably than other employees who had not requested leave under the FMLA or whether the adverse employment

33

action was a result of her protected activity.

Accordingly, the Court finds genuine issues of material fact remain as to Holland's FMLA retaliation claim, overall, and the Court, therefore, **DENIES** Defendant's motion for summary judgment with respect to such claim.

E.      *Title VII Retaliation*

Plaintiff argues that Defendant retaliated against her for filing a complaint alleging racial and ethnic discrimination pursuant to Title VII. In its motion for summary judgment, Defendant contends Plaintiff failed to provide sufficient proof to show that Plaintiff suffered an adverse employment action necessary to establish her prima facie case for Title VII retaliation.

In the absence of direct evidence of retaliation under Title VII, the Court will once again apply the *McDonnell Douglas* framework to analyze such claims. *See Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002) (applying the *McDonnell Douglas* framework to retaliation claims under Title VII). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). For purposes of establishing when Plaintiff participated in a Title VII protected activity, the Fifth Circuit has noted that "[a]n informal complaint may constitute protected activity for purposes of retaliation claims." *Amanduron v. Am. Airlines*, 416 Fed. App'x 421, 424 (5th Cir. 2011) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)). In this case, Plaintiff initially contacted her EEO counselor on April 3, 2008, who then informed the Dallas VA by April 15, 2008. Pl.'s App. 52. Therefore, any alleged adverse employment actions by Defendant must have occurred after that date.

34

The parties primarily dispute whether Plaintiff has suffered an adverse employment action. Plaintiff frames the adverse employment action as the creation of a hostile work environment, not to be confused with a Title VII hostile work environment claim. Pl.'s Resp. 31. This characterization is unnecessary; Plaintiff's claim is simply one for retaliation under Title VII. In deciding whether Plaintiff has established that she suffered an adverse employment action, the Court again applies the *Burlington* standard. *See Stewart*, 586, F.3d at 331. Plaintiff alleges she suffered the following adverse employment actions: (1) increased scrutiny with regards to her instrument counts, punctuality, and operating room conduct; (2) retention of an AWOL designation on her records; and (3) being informed of the problems with unapproved leave at staff meetings by her supervisor. *Id.* at 38. Whether these alleged actions constitute ordinary, benign criticism or materially adverse employment actions that would dissuade a reasonable employee from making a charge of discrimination is a question for the finder of fact.

As such, Plaintiff has established a genuine issue of material fact with regards to her claim for retaliation under Title VII. The Court, therefore, **DENIES** Defendant's motion for summary judgment with respect to Plaintiff's Title VII claim.

## IV.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Defendant's Motion for Summary Judgment (doc.20). Specifically, the Court finds genuine issues of material fact remain as to Holland's claims for retaliation under the Rehabilitation Act, retaliation under the FMLA, and retaliation under Title VII and **DENIES** the Defendant's motion as to these claims. Finding no genuine factual disputes, the Court **GRANTS** the Defendant's motion as to Plaintiff's

35

reasonable accommodation claim and her claim of FMLA interference.


SO ORDERED.

SIGNED January 18, 2012


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE